John A. Cullis (IL # 6273415, *pro hac vice forthcoming*)
Lawrence E. James (IL # 6289823, *pro hac vice forthcoming*)
**BARNES & THORNBURG, LLP**
One N. Wacker Drive, Suite 4400
Chicago, IL 60606-2833
Telephone: (312) 214-4572
Email:   jcullis@btlaw.com
         Lee.James@btlaw.com

Jennifer J. Axel (AZ #023883)
Maria F. Hubbard (AZ #033161)
**MURPHY CORDIER CASALE AXEL, PLC**
4647 N. 32nd Street, Suite 150
Phoenix, Arizona 85018
Telephone: (602) 274-9000
Fax: (602) 795-5896
Email:   jaxel@mccalaw.com
         maria@mccalaw.com

*Attorneys for Plaintiff U-Haul International, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| U-Haul International, Inc., a Nevada corporation, <br><br> Plaintiff, <br><br> v. <br><br> Public Storage Operating Company, a Maryland foreign business trust, <br><br> Defendant. | Case No: <br><br> **COMPLAINT** |

Plaintiff, U-Haul International, Inc. ("U-Haul"), pursuant to the Federal Declaratory Judgment Statute, 28 U.S.C. § 2201, complains against Defendant, Public Storage Operating Company ("Public Storage" or "Defendant"), as follows:

## NATURE OF ACTION

1.     U-Haul brings this action to protect its right to continue its longstanding use of the color orange and the word "orange" in connection with the promotion and marketing of its self-moving and storage business.

2.     Defendant has engaged in a multi-faceted and corrupt campaign to wrongfully appropriate rights in the use of the color and word "orange" in connection with self-storage services and to assert such rights against U-Haul, its sister companies, its dealers and licensees (the "U-Haul Businesses"). This campaign includes Defendant's filing of fraudulently manufactured evidence with the United States Patent and Trademark Office ("USPTO") in an effort to keep trademark registrations alive for marks that Defendant is not using, filing false statements with the USPTO claiming substantially exclusive use of the color orange in various forms of purported trade dress, and also making baseless demands that others, including U-Haul cease using the color and/or the term "orange" in connection with their businesses, which has necessitated this action.

3.     For 79 years, U-Haul has continuously and prominently featured the color orange in connection with its truck, trailer, and towing equipment rental including tow dollies, and auto transports and self-storage services ("Self-Moving and Storage Services"), and through extensive sales and promotion of those Self-Moving and Storage Services, has developed strong common law and registered trade dress rights in the color orange relating to its Self-Moving and Storage Services, embodying invaluable goodwill.  U-Haul's Self-Moving and Storage solutions including truck, trailer and towing rental equipment, rental of self-storage facilities, rental of portable moving containers, as well as sales of vehicle cargo equipment, towing hitches and towing wiring, boxes and packing supplies. Self-Moving and Storage Services are inextricably intertwined in the minds of consumers. Self-Moving and Storage Services address the same basic need for customers: how they deal with their belongings in transition.  Self-moving is "they have their things here; they want them there" while self-storage is "they have their things now; they want them later". In short, U-Haul has been providing solutions for Self-Moving and Storage needs for 79 years.

4.      U-Haul originally decided to paint the trailers orange because it was a color that was readily identifiable, looked clean, bright and attractive, and formed moving billboards to promote U-Haul services at service stations throughout a city.

5.      Orange U-Haul self-move truck, trailer, and towing equipment were always used not only for self-moving, but to store customer's goods as well. As part of its provision of Self-Moving and Storage services, U-Haul has also prominently used the color orange for at least 50 years in connection with the self-storage services it provided at its self-storage facilities and has expended substantial resources utilizing the color orange to promote those services.  U-Haul currently has over 1 million orange storage doors at its facilities.

6.      Despite U-Haul's longstanding nationwide use of the color orange in connection with its Self-Moving and Storage Services, as well as extensive nationwide third-party use of the color orange in connection with self-storage services, Defendant has now demanded that the U-Haul Businesses cease use of the color orange on a website operated by U-Haul relating to self-storage and cease its use of the term "orange" in connection with its Self-Moving and Storage business. This demand is part of an improper scheme by Defendant to wrongfully assimilate and steal the orange trade dress of U-Haul Businesses and third-parties and to monopolize the color orange and term "orange" within the self-storage industry and foreclose others from using the color orange and/or the term "orange" in connection with self-storage services.

7.      Defendant is so determined to monopolize the color and/or the term "orange" that it has fabricated use of trademarks containing the term "orange" and knowingly filed fraudulent evidence of trademark use with the USPTO to maintain registrations for the trademarks containing the term "orange" that Defendant has asserted against U-Haul and likely many other parties in the self-storage space.

8.      Defendant's demands are not only unjustified and improper given the longstanding and extensive use of the color orange by the U-Haul Businesses as well as the extensive use of the color by hundreds of independent self-storage providers, but they also

create a substantial and immediate controversy between Defendant and U-Haul that threatens to disrupt U-Haul's business.

9.     Accordingly, U-Haul asks this Court for a declaration that U-Haul's use of the color orange and the term "orange" does not violate Defendant's alleged rights, and, in particular, does not constitute trademark infringement, trademark dilution, unfair competition, or a violation of the Anticybersquatting Consumer Protection Act with respect to any alleged rights of Defendant.  In addition, U-Haul asks this Court to invalidate certain trademark registrations asserted by Defendant on the basis that Defendant perpetrated a fraud upon the USPTO by filing evidence it intentionally fabricated in an effort to maintain such trademark registrations and/or on the basis of non-use and abandonment.

## THE PARTIES

10.     U-Haul is a corporation organized and existing under the laws of the State of Nevada having a principal place of business at 2727 North Central Avenue, Phoenix, Arizona 85004.

11.     Defendant is a publicly traded real estate investment trust organized and existing under the laws of the State of Maryland having a principal place of business at 701 Western Avenue, Glendale, California 91201.

12.     Defendant is registered to transact business in Arizona and, upon information and belief, regularly transacts business in Arizona, including within this District.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b). This Court also has jurisdiction pursuant to the Lanham Act, 15 U.S.C. § 1121, and federal supplemental jurisdiction under 28 U.S.C. § 1367.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) in that U-Haul resides in and is doing business in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant is subject to jurisdiction in this District. Defendant sent its demand to U-Haul in this District demanding that U-Haul cease activities that U-Haul undertakes in this District. U-Haul is located in Phoenix, Arizona, within the jurisdiction of

this Court. Defendant's actions have caused and will continue to cause injury and threatened harm to U-Haul in this District. Thus, the consequences of Defendant's actions have a direct impact in Arizona and within this District, thereby producing effects in and directly implicating this District and Arizona.

### U-HAUL AND ITS ORANGE MARKS AND TRADE DRESS

15. U-Haul is the leading provider of Self-Moving and Storage Services in the United States. Throughout its long history, U-Haul has developed and maintained an exceptional national reputation for its Self-Moving and Storage Services.

#### U-Haul's Use of and Service Mark Rights to the Color Orange in Connection With its Self-Moving and Storage Services

16. Since 1945, U-Haul has prominently used the color orange as an eye-catching identifier of Self-Moving and Storage business, specifically its offering of do-it-yourself trucks, trailers, and towing equipment including tow dollies, and auto transports for rent.

17. Since its earliest inception, U-Haul has prominently and consistently displayed the color orange directly on the trailers and vehicles it offers for rent, on its rental facilities in all 50 states, and in nationwide advertising and promotional materials for its Self-Moving and Storage Services, including from retail locations within this judicial district. Here are a few examples showing early looks of U-Haul trailers:




 

18.    U-Haul promotes its Self-Moving and Storage Services using the color orange by prominently featuring the color on roadside and building signage. Examples of U-Haul's use of the color orange in promoting its Self-Moving and Storage Services are pictured below and in **Exhibit A** attached hereto:

 



19.    U-Haul also heavily promotes its Self-Moving and Storage Services via the Internet, including on its website accessible at www.uhaul.com and the U-Haul app, which U-Haul's customers use to find U-Haul's rental facilities located in all 50 states and make rental reservations as shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

22    20.    In addition, the packet U-Haul provides its customers when they rent a truck,

23  trailer, or towing equipment, which includes rental information and a move-in guide

24  prominently displays the color orange as shown below:

25
26
27  

28                                                              7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

21.    Notably, the vehicles and trailers U-Haul rents, examples of which are pictured below, prominently and consistently feature the color orange, and serve as thousands of rolling billboards all across America promoting U-Haul Self-Moving and Storage Services:







8

1
2
3
4
5
6
7
8
9






10    22.    In addition, as shown below and in **Exhibit A** attached hereto, U-Haul's rental
11 facilities, which are located in all 50 states, prominently feature the color orange both on the
12 exterior of the facilities and on in-store displays, and have done so for several decades, thereby
13 further developing and creating an association between the color orange and U-Haul Self-
14 Moving and Storage Services:

15
16
17
18
19




20
21
22
23
24
25




26
27
28

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20






21    23.    In addition, the over 21,000 independent businesses that are dealers of U-Haul
22  products and services -- including over 5000 independent self-storage facilities – are licensed
23  to use, among other things, U-Haul's orange trademarks, orange services marks and orange
24  trade dress.
25    24.    U-Haul has invested substantial resources developing, advertising, promoting
26  and marketing its Self-Moving and Storage Services under the color orange in connection with
27  its trade dress and various trademarks throughout the United States and establishing its
28

Services in the minds of consumers as high-quality services offered by U-Haul. As a result, and in addition to its registered rights described below, U-Haul enjoys extremely strong common law trade dress rights in its trademarks and trade dress featuring the color orange relating to its Self-Moving and Storage Services, embodying invaluable goodwill.

25. In addition to its extensive common law trademarks and trade dress rights featuring the color orange relating to its Self-Moving and Storage Services, U-Haul owns the following long-standing federal registrations for trade dress and trademarks that incorporate the color orange reciting vehicle rental and related services:

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
|  The mark is lined for the colors orange and aluminum  | 73096387 1075214 | Aug. 12, 1976 Oct. 11, 1977 | Jun. 15, 1946 | **Class 39:** rental of automobile freight trailers |
|  The drawing is lined for the colors blue and orange | 73103035 1094740 | Oct. 13, 1976 Jun. 27, 1978 | Sep. 14, 1974 | **Class 39:** truck and automobile trailer rentals and warehouse storage services |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|------|------|------|------|------|
|  | | | | |
|   The mark consists of an orange and white color combination as applied to truck and moving vans. The drawing is lined for the color orange, and orange and white are claimed as part of the mark. The dotted lines shown on the drawing are not part of the mark and serve only to show the position of the mark on the goods.   | 74695959 1968672 | Jun. 21, 1995 Apr. 16, 1996 | Oct. 15, 1987 | **Class 39:** truck and moving van rental services |
|   The drawing is lined for the colors silver and orange. | 72208429 827358 | Dec. 18, 1964 Apr. 11, 1967 | Jun. 15, 1946 | **Class 39:** rental or automobile freight trailer |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|------|-----------------|--------------------|-----------------------|--------------------|
|  | | | | |
|   The drawing is lined for the color orange   | 72176274 786156 | Sep. 04, 1963 Mar. 02, 1965 | Jul. 15, 1959 | **Class 39:** truck rentals |
|   The drawing is lined for the color orange   | 73038107 1024321 | Nov. 25, 1974 Nov. 04, 1975 | Nov. 15, 1969 | **Class 39:** truck and automobile trailer rentals |

26.     These registrations are valid, subsisting, and in full force and effect. True and correct copies of documents retrieved from the USPTO's online Trademark Status &

Document Retrieval database ("TSDR") evidencing the current status and U-Haul's ownership of the registrations are attached hereto as **Exhibit B**.

27.     Notably, these registrations have achieved incontestable status pursuant to 15 U.S.C. § 1065. Accordingly, the registrations provide conclusive evidence of the validity of the registered trade dress and trademarks, U-Haul's ownership of the registered trade dress and service marks, and U-Haul's exclusive right to use the registered trade dress and service marks in connection with the services recited in the certificates of registration for the trade dress and service marks. 15 U.S.C. § 1115(b).

**U-Haul's Longstanding Use of the Color Orange**
**In Connection With Its Self-Moving and Storage Services at self-storage facilities**

28.     U-Haul also offers Self-Moving and Storage Services at self-storage facilities. From the beginning, U-Haul customers used its orange rental equipment to store their goods, and since as early as 1974, U-Haul has directly used the color orange for sale and promotion of U-Haul Self-Moving and Storage Services at self-storage facilities.

29.     Notably, Self-Moving and Storage Services are inextricably linked in the minds of consumers because many consumers who are moving need to store their belongings, whether it is in a truck, a trailer or in a self-storage facility, and customers who are storing their belongings need to move them to and from storage. Even prior to U-Haul's operation of self-storage facilities, U-Haul's customers regularly rented self-move vehicles and trailers from U-Haul to use for self-storage. And of course today, many customers who rent storage units at a self-storage facility also rent vehicles to move possessions to or from those self-storage units.

30.     Like U-Haul, Public Storage over the years has provided its customers with options for moving their belongings.

31.     U-Haul prominently displays the color orange directly on its self-storage facilities and in nationwide advertising and promotional materials for those Self-Moving and Storage Services, including, but not limited to, roadside and building signage and the Internet.

32.    As pictured below, U-Haul also promotes its services provided at self-storage facilities on the trucks it rents using an image of an orange storage doors like those used in many of U-Haul's self-storage facilities:



33.    U-Haul advertises and sells its self-storage services under the color orange throughout the United States in all 50 states, including from retail locations in this judicial district. Representative examples of U-Haul's various uses of the color orange in connection with its self-storage services are pictured below and in **Exhibit C** attached hereto.

 

34.     U-Haul has invested substantial resources developing, advertising, promoting and marketing its self-storage services under various trademarks and trade dress that feature the color orange throughout the United States.

35.     In addition, U-Haul owns the following long-standing federal registrations for trade dress and service marks that incorporate the color orange reciting storage services:

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
| U-HAUL ▪▪▪▪ | 78468909 3034911 | Aug. 17, 2004 Dec. 27, 2005 | Aug. 01, 2000 | **Class 35:** Retail store services featuring truck and automobile trailer hitches, boxes for storage and moving, truck and automobile towing systems, lights, transmission coolers, and propane; retail outlet services featuring trucks and trailers **Class 39:** Rental |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
| | | | | services, namely, rental of trucks, vans, automobiles, automobile freight trailers, hitches, pads, tow bars, dollies, carriers, hand trucks, moving equipment, vehicles, moving vans, moving boxes, storage rooms; general storage services; rental of warehouse space; warehouse storage services, rental of garage space; parking lot services; rental of parking spaces; cargo handling cargo unloading; moving van services, moving van transport; rental of moving vans; furniture moving; delivery of |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
| | | | | goods by truck, car or van; truck hauling, truck towing |
|  The mark consists of ten windows arranged along two perpendicular edges of a building with orange storage doors visible through the windows. The matter shown in broken lines on the drawing serves to show positioning of the mark and no claim is made to it.  | 75176756 2286782 | Oct. 04, 1996 Oct. 12, 1999 | Oct. 01, 1992 | **Class 35:** retail store services featuring packaging and moving supplies<br><br>**Class 39:** self-storage services; rental of moving vans and trucks |
|  The drawing is lined for the colors blue and orange | 73103035 1094740 | Oct. 13, 1976 Jun. 27, 1978 | Sep. 14, 1974 | **Class 39:** truck and automobile trailer rentals and warehouse storage services |

18

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
|  | | | | |

36.     These registrations are valid, subsisting, and in full force and effect. True and correct copies of documents retrieved from the USPTO's online TSDR database evidencing the current status and U-Haul's ownership of the registrations are attached hereto as **Exhibit D**.

37.     Notably, Registration Nos. 1094740 and 3034911 have achieved incontestable status pursuant to 15 U.S.C. § 1065. Accordingly, these registrations provide conclusive evidence of the validity of the registered service marks, U-Haul's ownership of the registered service marks, and U-Haul's exclusive right to use the registered service marks in connection with the services recited in the certificates of registration for the service marks. 15 U.S.C. § 1115(b).

**DEFENDANT'S IMPROPER AND FRAUDULENT ATTEMPTS TO CLAIM EXCLUSIVE RIGHTS IN THE COLOR ORANGE AND THE WORD "ORANGE"**

38.     Defendant is U-Haul's direct competitor in the self-storage market in 40 states and Washington D.C.  Although Public Storage's founder, Wayne Hughes, has admitted that Public Storage originally and intentionally knocked-off the color orange to draw an association with U-Haul as a way to attract customers to Public Storage, it is only over the past few years that Public Storage has made a dramatic shift in its branding and promotion of its self-storage services away from prominently using the colors purple and/or yellow together with the color orange in its promotional materials, self-storage facilities, and signage to

prominently featuring only the color orange, a shade of orange that is much closer to the shade of orange used by U-Haul.

39.     In conjunction with this shift, Defendant has improperly attempted to claim exclusive nationwide rights to use and exclude others from using the color orange in various formats as well as the word "ORANGE" for self-storage and related services by, among other things, filing several federal trademark applications seeking to register these marks.

### Defendant's Prior Use of the Colors Purple and/or Yellow in Combination with the Color Orange

40.     Upon information and belief, starting in 1994 and for many years thereafter, Defendant predominantly featured the color purple in combination with the color orange in its logo, on promotional materials, as well as on its self-storage facilities. Examples of Public Storage's past use of the colors purple in combination with the color orange are pictured below:







41.     Starting in 1996, Defendant even sought to protect its rights in the combination of the colors purple and/or yellow and orange by filing applications to register and obtaining registrations for trade dress and service marks that incorporate both colors for its self-storage services including those listed below:

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
| The mark consists of three stripes which are applied in the colors and the proportions shown to the exterior of buildings used for providing the services. The mark is lined for the colors orange, yellow, and purple. | 75821977 2371339 | Oct. 14, 1999 Jul. 25, 2000 | Oct. 1994 | **Class 39:** renting and leasing self-storage facilities |
| | 75158918 2333475 | Sep. 03, 1996 Mar. 21, 2000 | Oct. 1994 | **Class 35:** retail store services featuring metal locks, storage boxes, wardrobe |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
|  The mark consists of three stripes which are applied in the colors and the proportions shown to the exterior of buildings used for providing the services. The mark is lined for the colors orange, yellow, and purple.  | | | | boxes, television and microwave boxes, mirror boxes, lamp boxes, file boxes, dish barrel boxes, paper cushioning for packing, newsprint, paper padding for moving furniture, plastic stretch wrap, plastic cellular cushioning packaging material for packing, markers and pens, paper tape, polystyrene foam sheets for packing, foam picture corner protectors, plastic packing tape, plastic strapping tape, padded foam pouches for packing dishes and glass items, foam peanuts for packing, plastic sacks for protecting furniture during transportation, plastic chair and sofa covers for protecting furniture during transportation, padded fabric covers for protecting furniture during transportation, commercial tape dispensers, rope and twine made of natural or synthetic fibers |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
|  The mark is lined for the colors orange and purple  | 75978578 2286764 | Sep. 03, 1996 Oct. 12, 1999 | Sep. 1998 | **Class 16:** writing implements, namely, markers and pens |
|  The mark is lined for the colors orange ad purple  | 75158920 2487759 | Sep. 03, 1996 Sep. 11, 2001 | Sep. 1998 | **Class 16:** packing and moving materials, namely, paper padding for moving furniture<br><br>**Class 17:** packing and moving materials, namely, polystyrene foam sheets for packing, plastic strapping tape, padded foam pouches for packing dishes and glass items, foam peanuts for packing, plastic sacks for protecting furniture during transportation, plastic chair and sofa covers for protecting furniture during transportation, and padded fabric covers for protecting furniture during transportation |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|------|-----------------|---------------------|------------------------|--------------------|
|  The mark is lined for the colors orange ad purple  | 75978568 2363325 | Sep. 03, 1996 Jun. 27, 2000 | Sep. 1998 | **Class 6:** metal locks **Class 16:** packing and moving materials, namely, storage boxes, wardrobe boxes, television and microwave boxes, mirror boxes, lamp boxes, file boxes, dish barrel boxes, plastic cellular cushioning packing material for packing; and paper tape **Class 17:** packing and moving materials, namely, plastic packing tape, and commercial tape dispensers **Class 35:** retail store services featuring metal locks, storage boxes, wardrobe boxes, television and microwave boxes, mirror boxes, lamp boxes, file boxes, dish barrel boxes, paper cushioning for packing, newsprint, paper padding for moving furniture, plastic stretch wrap, cellular cushioning |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
|  |  |  |  | packaging material for packing, markers and pens, paper tape, polystyrene foam sheets for packing, foam picture corner protectors, plastic packing tape, plastic strapping tape, padded foam pouches for packing dishes and glass items, foam peanuts for packing, plastic sacks for protecting furniture during transportation, plastic chair and sofa covers for protecting furniture during transportation, padded fabric covers for protecting furniture during transportation, commercial tape dispensers, rope and twine made of natural or synthetic fibers |

**Defendant's Shift to Using Only the Color Orange and Improper Attempts to Claim Exclusive Rights**

42.     Despite many years of featuring the color purple in combination with the color orange in the promotion of its self-storage services and on its self-storage facilities, and having knowledge of U-Haul's prominent use of the color orange in connection with its Self-Moving and Storage Services, Defendant made a distinct shift in its marketing efforts by limiting and then apparently abandoning all use of the color purple to switch to solely featuring the color orange on its self-storage facilities and its marketing materials. Examples of Defendant's

recent use of the color orange (without the color purple) in connection with its self-storage services and its marketing for those services are pictured below and in **Exhibit E** attached hereto:










43.     Defendant's shift to solely featuring the color orange to promote its services is further demonstrated by the fact that it modified the appearance of many of its self-storage facilities to eliminate the use of the colors purple and/or yellow and only display the color orange. Examples of the modifications are pictured below and in **Exhibit F** attached hereto:

| Prior Building Appearance | Current Building Appearance |
|---|---|



| Prior Building Appearance | Current Building Appearance |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

| Prior Building Appearance | Current Building Appearance |
| :---: | :---: |
| | |
|  |  |
|  |  |
|  |  |
|  |  |
| | |

| Prior Building Appearance | Current Building Appearance |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

44.    In parallel to Defendant's change in branding, Defendant has also sought to wrongfully monopolize the use of the color orange through a scheme to serially register a wide range of trademarks that include the use of the word ORANGE, the color orange on a wide range of common building features and the color orange on a wide range of signs, countertops,

canopies, furnishings, displays, and storage doors, thereby attempting to foreclose any competitors from using the color orange in connection with self-storage services or related goods and services even though Defendant is fully aware of the industry wide use of the color orange with self-storage services.

45. Such applications for trade dress and service marks that incorporate and solely feature the color orange or feature the word "orange" for self-storage and related services include the following:

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
|  | 88746009 | Jan. 03, 2020 | 1972 | **Class 39:** Providing self-storage facilities for others; Renting and leasing of private storage spaces; Renting and leasing of climate-controlled storage spaces; Storage of goods |
|  | 88746025 | Jan. 03, 2020 | 1972 | **Class 39:** Providing self-storage facilities for others; Renting and leasing of private storage spaces; Renting and leasing of climate-controlled storage spaces; Storage of goods |
|  | 88623045 | Sep. 19, 2019 | 1972 | **Class 39:** Providing self-storage facilities for others; Renting and leasing of private storage spaces; Renting and leasing of climate-controlled storage spaces; Storage of goods |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
|  | 88623068 | Sep. 19, 2019 | 2011 | **Class 39:** Providing self-storage facilities for others; Renting and leasing of private storage spaces with limited access; Renting and leasing of climate-controlled storage spaces with limited access; storage of goods |
|  The mark consists of the color orange as used in connection with self-storage services as applied on buildings, signage, awnings, canopies, furnishings, displays, and countertops. | 88623084 | Sep. 19, 2019 | 1972 | **Class 39:** Providing self-storage facilities for others; renting and leasing of private storage spaces; renting and leasing of climate-controlled storage spaces; storage of goods |
|  The mark consists of the color orange as applied to business signage | 88623145 | Sep. 19, 2019 | Sep. 1998 | **Class 39:** Providing self-storage facilities for others; Renting and leasing of private storage spaces; Renting and leasing of climate-controlled storage spaces; Storage of goods |
|  | 88623262 | Sep. 19, 2019 | Aug. 1972 | **Class 39:** Providing self-storage facilities for others; Renting and leasing of storage spaces; Storage of goods |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
| **BEHIND THE ORANGE DOORS** | 88623214 6598358 | Sep. 19, 2019 Dec. 21, 2021 | May 03, 2021 | **Class 39:** Providing self-storage facilities for others; providing self-storage facilities, namely, renting and leasing of private storage spaces for others; providing self-storage facilities, namely, renting and leasing of climate-controlled storage spaces for others; storage of goods |
| **ORANGE DOOR STORAGE INSURANCE PROGRAM** | 87195235 5697798 | Oct. 06, 2016 Mar. 12, 2019 | Oct. 01, 2016 | **Class 35:** Tenant storage insurance program, namely, insurance claims management services for insurance program offering insurance coverage to tenants for their contents stored at self-storage facilities<br><br>**Class 36:** Tenant storage insurance program, namely, insurance underwriting and administration services for insurance program offering insurance coverage to tenants for their contents stored at self-storage facilities |
| **ORANGE DOORS** | 98637899 | Jul. 08, 2024 | | **Class 39:** Providing self-storage facilities for others; renting and leasing of storage |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
| | | | | spaces; storage of goods |
| **PS ORANGE** | 98637892 | Jul. 08, 2024 | | **Class 39:** Providing self-storage facilities for others; renting and leasing of storage spaces; storage of goods |
|  | 87503565 6428493 | Jun. 23, 2017 Jul. 20, 2021 | Sep. 1998 | **Class 6:** Metal Locks; Metal locks for use in securing storage facilities

**Class 7:** Packing and storing materials, namely, commercial adhesive tape dispensers machines for commercial use

**Class 16:** Packing paper; Plastic bags for packing; Plastic bubble packs for wrapping or packaging; Plastic film for wrapping or packaging; Cardboard; Cardboard boxes; Cardboard tubes; Cardboard packaging; Cardboard containers; Packing and moving materials made of cardboard, namely, storage boxes, wardrobe boxes, television and microwave boxes, mirror boxes, lamp boxes, file boxes, dish barrel boxes, paper |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|------|------|------|------|------|
| | | | | padding for moving furniture; Paper tape; Moving kits, namely, kits comprising supplies for packaging and moving purposes, namely, cardboard boxes in a variety of sizes, packing paper, stretch plastic wrap, adhesive tape and dispenser used for moving and packing for household and commercial use, fitted plastic covers for transporting furniture, plastic bubble-cushioning pouches for wrapping and packaging, packing foam cushioning in sheet and roll form, quilted pads, moving blankets; Plastic film for wrapping; Plastic packing tape for personal household use |
| | | | | **Class 17:** Packing and storing materials, namely, masking tape, adhesive plastic packing tape for commercial use; Low-density polyurethane packaging foam in the form of foam peanuts, foam pouches for dishes, plates, glasses and bowls; Plastic |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|------|-----------------|--------------------|-----------------------|--------------------|
| | | | | foam used for storage and packing; Low-density polyurethane packaging foam in the form of foam picture corner protectors; Polystyrene foam sheets for packing; Plastic cellular cushioning packing material for packing; Plastic film for packing; Moving blankets in the nature of thermal insulating blankets not of rubber, plastic or paper for use as padding materials for the storage and transportation of goods; Insulation covers for storage and transportation of goods, namely, padded insulating blanket pads not of rubber, plastic or paper

**Class 22:** Ropes; Ropes and synthetic ropes; Packing rope; Packing string; Twine; Moving blankets, in the nature of tarpaulins, not of rubber, plastic or paper for use as padding materials

**Class 24:** Unfitted padded fabric covers |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|------|-----------------|---------------------|------------------------|---------------------|
| | | | | for protecting furniture during packing and moving; Plastic mattress covers used to protect mattress during packing and moving; padding materials, namely, moving blankets not of rubber, plastic, or paper used for moving and packing<br><br>**Class 35:** Retail store services featuring packing, moving and storage goods; Retail store services featuring plastic and paper products for use in packing and moving; Retail store services featuring paper and foam packaging, metal locks, storage boxes, wardrobe boxes, television and microwave boxes, mirror boxes, lamp boxes, file boxes, dish barrel boxes, paper cushioning for packing, newsprint, paper padding for moving furniture, plastic stretch wrap, cellular cushioning packaging material for packing, markers and pens, paper tape, |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
| | | | | polystyrene foam sheets for packing, foam picture corner protectors, plastic packing tape, plastic strapping tape, padded foam pouches for packing dishes and glass items, foam peanuts for packing, plastic sacks for protecting furniture, plastic chair and sofa covers for protecting furniture, padded fabric covers, rope and twine, blanket pads and moving blankets |
|  | 88061941 5860260 | Aug. 01, 2018 Sep. 17, 2019 | Jun. 25, 2018 | **Class 36:** Commercial real estate management services; real estate services, namely, management of self-storage facilities |
|  | 88623195 6176927 | Sep. 19, 2019 Oct. 13, 2020 | Dec. 28, 2018 | **Class 39:** Providing self-storage facilities for others; renting and leasing of private storage spaces; renting and leasing of climate-controlled storage spaces; storage of goods |
|  | 98637904 | Jul. 08, 2024 | | **Class 35:** Insurance claims auditing services; Insurance claims auditing services in the fields of renters insurance, tenant insurance, and storage insurance |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
| | | | | **Class 36:** Insurance claims processing; Insurance claims management services; Insurance information and consultancy; Insurance underwriting and administration; Insurance underwriting, issuing, and administration services; Insurance claims processing in the fields of renters insurance, tenant insurance, and storage insurance; Insurance claims management services in the fields of renters insurance, tenant insurance, and storage insurance; Insurance underwriting and administration in the fields of renters insurance, tenant insurance, and storage insurance; Insurance underwriting, issuing, and administration services in the fields of renters insurance, tenant insurance, and storage insurance |
|  | 98637909 | Jul. 08, 2024 | | **Class 35:** Insurance claims auditing services; Insurance claims auditing services in the fields |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|------|-----------------|--------------------|-----------------------|--------------------|
|  |  |  |  | of renters insurance, tenant insurance, and storage insurance **Class 36:** Insurance claims processing; Insurance claims management services; Insurance information and consultancy; Insurance underwriting and administration; Insurance underwriting, issuing, and administration services; Insurance claims processing in the fields of renters insurance, tenant insurance, and storage insurance; Insurance claims management services in the fields of renters insurance, tenant insurance, and storage insurance; Insurance underwriting and administration in the fields of renters insurance, tenant insurance, and storage insurance; Insurance underwriting, issuing, and administration services in the fields of renters insurance, tenant insurance, and storage insurance |
|  | 87195245 5697799 | Oct. 06, 2016 | Oct. 01, 2016 | **Class 35:** Tenant storage insurance |

| Mark | Ser. / Reg. No. | Filing / Reg. Date | First Use in Commerce | Goods and Services |
|---|---|---|---|---|
|  | | Mar. 12, 2019 | | program, namely, insurance claims management services for insurance program offering insurance coverage to tenants for their contents stored at self-storage facilities **Class 36:** Tenant storage insurance program, namely, insurance underwriting and administration services for insurance program offering insurance coverage to tenants for their contents stored at self-storage facilities |

46.    Notably, Defendant's attempts to register and registration of the various depictions of the color orange above is improper because filing the applications to register the trade dress above required that Defendant knowingly represent that it believed that it had substantially exclusive use of the applied-for orange trade dress and/or that the applied-for orange trade dress has acquired distinctiveness for Defendant's services despite knowing that in addition to U-Haul's longstanding and extensive use of the color orange, there are hundreds of independent third-party self-storage providers that use the color orange in connection with self-storage services. Many of those applications have been rejected by the USPTO.

47.    Defendant is now improperly relying on its registrations for marks that include the term "orange," including its' fraudulently maintained registrations, as an additional basis for seeking to exclude U-Haul and others from using the color orange in connection with self-storage services.

48.    As such, Defendant's attempts to register the trade dress and service marks listed above are improper and are part of a wrongful attempt to monopolize the color orange and the term "orange" for its own use in connection with self-storage services.

49.    In addition, Defendant's scattershot efforts to register various orange building trade dress stand in stark contrast to a typical trade dress registration. A business seeking to protect its building design trade dress typically seeks to register a specific, distinctive, and unique feature of trade dress. In contrast, Defendant has filed multiple registrations covering various indistinct portions of buildings. For example, in application Ser. Nos. 88623068 and 88623084, Defendant seeks to broadly register the color orange "as used in connection with self-storage services as applied on buildings, signage, awnings, canopies, furnishings, displays, and countertops" (Ser. No. 88623068) and "as applied to business signage" (Ser. No. 88623084) without claiming a specific distinctive design feature. These scattershot trademark applications appear designed to prevent others in the self-storage industry from using the color orange in *any* capacity on the exterior of a building. These broad claims to an exclusive right to use the color orange in connection with self-storage services are also improper given the longstanding and widespread use of the color by hundreds of third party self-storage providers.

**Defendant's Deceptive and Fraudulent Maintenance of its Registration for the ORANGE STORAGE Mark (Reg. No. 5083797) Asserted Against U-Haul**

50.    On information and belief, on February 26, 2016, a third party that is completely unrelated to Defendant, IEP Group, LLC ("IEP"), filed an application to register the ORANGE STORAGE mark (Ser. No. 86920897) for "Providing self-storage facilities for others" in Class 39 based on an intent to use the mark in connection with those services. A true and correct copy of this application is attached hereto as **Exhibit G**.

51.    Based upon U-Haul's investigation and on information and belief, this ORANGE STORAGE mark was adopted by IEP as part of a larger business concept that was intended to offer commercial storage solutions of varying sizes and types (covered, enclosed, outdoor, etc.,) to companies working in the oil exploration industry in Midland, Texas.  This

was a business venture that was completely separate and distinct from Public Storage and the self-storage solutions offered by Public Storage.

52.    On September 20, 2016, IEP filed a Statement of Use in connection with the ORANGE STORAGE application alleging first use of the mark on March 1, 2016 and submitting a specimen of use showing use of the ORANGE STORAGE mark in connection with its new business concept branded as "Orange Storage" and with the services recited in the application. A true and correct copy of the Statement of Use is attached hereto as **Exhibit H**.

53.    The USPTO accepted IEP's Statement of Use, and on November 15, 2016 issued a registration for the ORANGE STORAGE mark to IEP (Reg. No. 5083797) for "Providing self-storage facilities for others" in in Class 39 (the "ORANGE STORAGE Registration"). A true and correct copy of the registration certificate for the ORANGE STORAGE mark is attached hereto as **Exhibit I**.

54.    On November 19, 2018, IEP assigned the ORANGE STORAGE Registration to Defendant. A true and correct copy of the assignment is attached hereto as **Exhibit J**.

55.    Based on U-Haul's investigation and on information and belief, Defendant did not use the ORANGE STORAGE mark after obtaining the mark from IEP in 2018.  Facing a November 15, 2022 deadline for filing a Declaration of Use under 15 U.S.C. §1058 (a "Section 8 Declaration") required to maintain the ORANGE STORAGE Registration, Defendant added the ORANGE STORAGE mark to a pre-existing blog titled "The Organized Life" accessible on Defendant's website solely to create a specimen of use to submit to the USPTO with its Section 8 Declaration.

56.    Notably, Defendant did not file a Declaration of Incontestability under Section 15 (a "Section 15 Declaration") with the Section 8 Declaration it filed in connection with the ORANGE STORAGE Registration. Registrants typically file a Section 15 Declaration with a Section 8 Declaration if the registered mark had been in continuous use in United States commerce for five consecutive years after the date of registration. Defendant's

failure to file a Section 15 Declaration indicates Defendant had not used the ORANGE STORAGE mark since obtaining the mark from IEP in 2018.

57.     As shown below and in **Exhibit K**, as late as March 9, 2022, Defendant's The Organized Life blog did not display the ORANGE STORAGE mark:



58.     However, based on U-Haul's investigation and on information and belief, shortly before Defendant filed is Section 8 Declaration in connection with the ORANGE STORAGE Registration on June 6, 2022, Defendant added the ORANGE STORAGE mark to its The Organized Life blog. Defendant then submitted a printout of the blog captured on May 12, 2022, as the specimen of use with its Section 8 Declaration in which Defendant declared under penalty of perjury pursuant to 18 U.S.C. §1001 that the ORANGE STORAGE mark was in use in United States commerce in connection with the services recited in the Registration ("providing self-storage facilities for others.") A true and correct copy of Defendant's Section 8 Declaration attached hereto as **Exhibit L** and an image of the purported use of the ORANGE STORAGE mark submitted with the Declaration is included below:



59.    In connection Defendant's Section 8 Declaration, Defendant submitted the Declaration of Steven C. Babinski, Defendant's Associate General Counsel, Corporate & Securities, declaring that that the ORANGE STORAGE mark was in *bona fide* use in United States commerce in connection with "providing self-storage facilities for others." (*see* **Exhibit L.**)

60.    As shown below and in **Exhibit M** attached hereto, less than a month after filing its Section 8 Declaration, Defendant removed the ORANGE STORAGE mark from its The Organized Life blog:



61.     Based on U-Haul's investigation and on information and belief, Defendant, through Mr. Babinski, knowingly and with intent to deceive the USPTO, falsely represented in Defendant's Section 8 Declaration that the ORANGE STORAGE mark was in *bona fide* use in United States commerce in connection with the services recited in the Registration, when it was not.

62.     As a result of Defendant's submission of the foregoing fraudulent Section 8 Declaration, on November 23, 2022, the USPTO relied upon Defendant's deceptive and fraudulent representations in accepting Defendant's Section 8 Declaration and maintained the ORANGE STORAGE Registration. A true and correct copy of the acceptance is attached hereto as **Exhibit N**.

63.     Furthermore, Defendant has ceased use of the ORANGE STORAGE mark in commerce and, on information and belief, has no intent to resume such use.  Therefore, Defendant has abandoned the ORANGE STORAGE mark.

1
2

**Defendant's Deceptive and Fraudulent Maintenance of its Registration for the ORANGE IS THE NEW SIZE Mark (Reg. No. 5197479) Asserted Against U-Haul**

3

64.    On August 29, 2016, IEP also filed an application to register the ORANGE

4

IS THE NEW SIZE mark (Ser. No. 87154001) for "Providing self-storage facilities for

5

others" in Class 39 based on an intent to use the mark in connection with those services. A

6

true and correct copy of this application is attached hereto as **Exhibit O**.

7

65.    Based upon U-Haul's investigation and on information and belief, the

8

ORANGE IS THE NEW SIZE mark was adopted and presented by IEP as the slogan

9

promoting IEP's new concept of flexible storage solutions to its commercial clients working

10

in the oil exploration sector.

11

66.    On March 15, 2017, IEP filed a Statement of Use in connection with the

12

application alleging first use of the mark on March 1, 2016 and submitting a specimen of use

13

showing use of the ORANGE IS THE NEW SIZE mark. A true and correct copy of the

14

Statement of Use is attached hereto as **Exhibit P**.

15

67.    The USPTO accepted IEP's Statement of Use, and on May 2, 2017 issued a

16

registration for the ORANGE IS THE NEW SIZE mark to IEP (Reg. No. 5197479) for

17

"Providing self-storage facilities for others" in in Class 39 (the "ORANGE IS THE NEW

18

SIZE Registration"). A true and correct copy of the registration certificate for the ORANGE

19

IS THE NEW SIZE mark is attached hereto as **Exhibit Q**.

20

68.    On November 19, 2018, IEP assigned the ORANGE IS THE NEW SIZE to

21

Defendant. *See* **Exhibit J**.

22

69.    Based on U-Haul's investigation and on information and belief, Defendant

23

did not use the ORANGE IS THE NEW SIZE mark after obtaining the mark from IEP in

24

2018. Facing a May 2, 2023 deadline for filing a Section 8 Declaration required to maintain

25

the ORANGE IS THE NEW SIZE Registration, Defendant added the ORANGE IS THE

26

NEW SIZE mark as a section heading to a pre-existing article entitled "Fall Cleaning Tips:

27

What to Declutter and Store this Season" posted to Defendant's The Organized Life blog (the

28

1    "Fall Cleaning Article") on Defendant's website solely to create a specimen of use to submit

2    with its Section 8 Declaration.

3        70.     Notably, Defendant did not file a Section 15 Declaration with the Section 8

4    Declaration it filed in connection with the ORANGE IS THE NEW SIZE Registration.

5    Defendant's failure to file a Section 15 Declaration indicates Defendant had not used the

6    ORANGE IS THE NEW SIZE mark since obtaining the mark from IEP in 2018.

7        71.     As shown below and in **Exhibit R**, prior to adding the ORANGE IS THE

8    NEW SIZE mark as a section heading in the Fall Cleaning Article, the section heading was

9    titled as "A Storage Unit Could Help":_



72.    However, based on U-Haul's investigation and on information and belief, shortly before Defendant filed is Section 8 Declaration in connection with the ORANGE IS THE NEW SIZE Registration on April 7, 2023, Defendant replaced the "A Storage Unit Could Help" heading in the Fall Cleaning Article with the ORANGE IS THE NEW SIZE mark. Defendant then submitted a printout of the Fall Cleaning Article captured on April 6, 2023 as the specimen of use with its Section 8 Declaration in which Defendant declared under penalty of perjury pursuant to 18 U.S.C. §1001 that the ORANGE IS THE NEW SIZE mark was in use in United States commerce in connection with the services recited in the Registration ("providing self-storage facilities for others.") A true and correct copy of Defendant's Section 8 Declaration is attached hereto as **Exhibit S** and an image of the purported use of the ORANGE IS THE NEW SIZE mark submitted with the Declaration is included below:



**Orange is the New Size®**

You could also consider saving garage space by dropping off your seasonal gear at an offsite storage unit. If you have a storage space, this is the time of year to grab your favorite fall décor during the same trip!

"As you pull out Halloween or Thanksgiving decorations, replace them with summertime things," said Kay. "Those things could be beach canopies, folding chairs, summer sports equipment, Boogie boards, 4th of July decorations, flags and summer home décor."

No storage unit? We can solve that problem, no matter the season! We're always opening new locations, so head to the Public Storage website to see which storage units near you have enough space for your summer stuff!

73.    Based on U-Haul's investigation and on information and belief, Defendant had not used the ORANGE IS THE NEW SIZE mark in any way other than as a section header in the Fall Cleaning Article, which does not constitute *bona fide* trademark use of the mark in connection with the services recited in the ORANGE IS THE NEW SIZE registration.

74.    Notably, the fraudulent specimen dated April 7, 2023, also shows use of the ORANGE STORAGE mark even though that mark was removed from Public Storage's blog on July 5, 2022, according to U-Haul's investigation.  Upon information and belief, Defendant inserted the ORANGE STORAGE mark in the blog article submitted to the USPTO to further deceive the USPTO and conceal the fraud being perpetrated by Defendant.

75.    In connection with Defendant's Section 8 Declaration, Defendant submitted the Declaration of Steven C. Babinski, Defendant's Associate General Counsel, Corporate & Securities, declaring t penalty of perjury pursuant to 18 U.S.C. § 1001 that the ORANGE IS THE NEW SIZE mark was in *bona fide* use in United States commerce in connection with "providing self-storage facilities for others." (*see* **Exhibit S.**)

76.    Based on U-Haul's investigation and on information and belief, Defendant, through Mr. Babinski, knowingly and with intent to deceive the USPTO, falsely represented in Defendant's Section 8 Declaration that the ORANGE IS THE NEW SIZE mark was in *bona fide* use in United States commerce in connection with the services recited in the Registration, when it was not.

77.    As a result of Defendant's submission of the foregoing fraudulent Section 8 Declaration, on September 5, 2023, the USPTO relied upon Defendant's deceptive and

1  fraudulent representations in accepting Defendant's Section 8 Declaration and maintained the

2  ORANGE IS THE NEW SIZE Registration. A true and correct copy of the acceptance is

3  attached hereto as **Exhibit T**.

4       78.    In addition, based on U-Haul's investigation and on information and belief,

5  prior to April 6, 2023, which is the day on which Defendant captured the Fall Cleaning Article

6  for use as the specimen of use for the Section 8 Declaration for the ORANGE IS THE NEW

7  SIZE Registration, the ORANGE STORAGE mark did not appear in the Fall Cleaning

8  Article. However, upon investigation and on information and belief, Defendant added the

9  ORANGE STORAGE mark to the Fall Cleaning Article for the version captured for the

10  specimen of use, and then removed the mark from the Fall Cleaning Article shortly thereafter

11  as shown below and in **Exhibits S, U, and V**.







79.    Upon information and belief, Defendant added the ORANGE STORAGE mark to the version of the Fall Cleaning Article used for the specimen of use for the Section 8 Declaration for the ORANGE IS THE NEW SIZE mark in an attempt to conceal its fraudulent and improper addition and then removal of the mark from Defendant's The Organized Life blog described above.

80.    Furthermore, Defendant has ceased use of the ORANGE IS THE NEW SIZE mark in commerce and, on information and belief, has no intent to resume such use. Therefore, Defendant has abandoned the ORANGE IS THE NEW SIZE mark.

**Defendant's Abandonment of the ORANGE DOOR STORAGE INSURANCE PROGRAM and Design Mark (Reg. No. 5697799)**

81.    On October 6, 2016, Defendant filed an application, a copy of which is attached hereto as **Exhibit W** with the USPTO to register the ORANGE DOOR STORAGE INSURANCE PROGRAM and Design mark pictured below (the "Orange and Purple Insurance Mark") for "Tenant storage insurance program, namely, insurance underwriting, administration and claims management services for insurance program offering insurance coverage to tenants for their contents stored at self-storage facilities" in Class 35 and "and "Tenant storage insurance program, namely, insurance underwriting and administration services for insurance program offering insurance coverage to tenants for their contents stored at self-storage facilities" in Class 36 based on an intent to use the mark in connection with those services:



82.    On December 12, 2018, Defendant filed a Statement of Use, a copy of which is attached hereto as **Exhibit X** in connection with the application with a specimen of use

showing the following use of the Orange and Purple Insurance Mark and alleging the mark was first used in United States commerce in connection with the services recited in the application on October 1, 2016:



83.     The USPTO accepted Defendant's Statement of Use, and, on March 12, 2019, issued a registration for the Orange and Purple Insurance Mark (Reg. No. 5697799) for "Tenant storage insurance program, namely, insurance claims management services for insurance program offering insurance coverage to tenants for their contents stored at self-storage facilities" in Class 35 and "Tenant storage insurance program, namely, insurance underwriting and administration services for insurance program offering insurance coverage to tenants for their contents stored at self-storage facilities" in Class 36. A true and correct copy of the registration certificate is attached hereto as **Exhibit Y**.

84.     Subsequently, in July 2024, Defendant filed the following two applications to register new versions of the ORANGE DOOR STORAGE INSURANCE PROGRAM mark (collectively, the "New Orange and Blue Insurance Marks") with a new design element and claiming the colors orange and blue rather than the colors orange and purple:

| Mark | Ser. No. | Filing Date | Goods and Services |
|---|---|---|---|
|  | 98637909 | Jul. 08, 2024 | **Class 35:** Insurance claims auditing services; Insurance claims auditing services in the fields of renters insurance, tenant insurance, and storage insurance<br><br>**Class 36:** Insurance claims processing; Insurance claims management services; Insurance information and consultancy; Insurance underwriting and administration; Insurance underwriting, issuing, and administration services; Insurance claims processing in the fields of renters insurance, tenant insurance, and storage insurance; Insurance claims management services in the fields of renters insurance, tenant insurance, and storage insurance; Insurance underwriting and administration in the fields of renters insurance, tenant insurance, and storage insurance; Insurance underwriting, issuing, and administration services in the fields of renters insurance, tenant insurance, and storage insurance |
|  | 98637904 | Jul. 08, 2024 | **Class 35:** Insurance claims auditing services; Insurance claims auditing services in the fields of renters insurance, tenant insurance, and storage insurance<br><br>**Class 36:** Insurance claims processing; Insurance claims management services; Insurance information and consultancy; Insurance underwriting and administration; Insurance underwriting, issuing, and administration services; Insurance |

| Mark | Ser. No. | Filing Date | Goods and Services |
|---|---|---|---|
| | | | claims processing in the fields of renters insurance, tenant insurance, and storage insurance; Insurance claims management services in the fields of renters insurance, tenant insurance, and storage insurance; Insurance underwriting and administration in the fields of renters insurance, tenant insurance, and storage insurance; Insurance underwriting, issuing, and administration services in the fields of renters insurance, tenant insurance, and storage insurance |

85. Based on U-Haul's investigation and on information and belief, Defendant has ceased its use of the Orange and Purple Insurance Mark and is now using one or both of the New Orange and Blue Insurance Marks as shown below and in **Exhibit Z** attached hereto:



86. Defendant itself has admitted that it ceased use of the Orange and Purple Insurance Mark as of 2023 and replaced it with the New Orange and Blue Insurance Marks

with a prominent announcement of such transition on its "Our History" page of its website, www.orangedoorstorageinsurance.com, as shown below and in **Exhibit AA** attached hereto:



87.     This change in the appearance of the ORANGE DOOR STORAGE INSURANCE PROGRAM mark is consistent with Defendant's overall shift away from the use of marks displaying the colors purple and orange detailed above.

88.     Based on U-Haul's investigation and on information and belief, Defendant has abandoned the Orange and Purple ORANGE DOOR STORAGE Mark with no intent to resume such use of the Mark.

**Extensive and Nationwide Third-Party Use of the Color Orange in Connection with Self-Storage Services Undercuts Defendant's Claim to Exclusive Rights to the Color Orange**

89.     Any claim by Defendant that it has any kind of exclusive right to use the color orange in connection with self-storage services, that the color has acquired distinctiveness for Defendant's self-storage services, and/or that other self-storage service providers' use of the

color orange violates any alleged right of Defendant is severely undercut by the fact that there are hundreds of third-party self-storage providers that use the color orange in connection with their self-storage services.

90.    These third-party self-storage providers utilize the color orange in a wide array of formats on their self-storage facilities, signage, and other marketing materials, examples of which are pictured below and in **Exhibit CC** attached hereto.

Palmdale, California



Killeen, Texas



Lawton, Oklahoma



Indianapolis, Indiana



Middletown, Texas



Ellisville, Missouri



Hamden, Connecticut



Summerfield, Florida



Michigan City, Indiana



91.    This extensive, widespread nationwide use of the color orange in connection with self-storage services, including U-Haul's longstanding and nationwide use of the color orange in connection with its Self-Moving and Storage Services, demonstrates that the color when used in connection with such services does not and cannot function as a source identifier for any one particular self-storage service provider. While consumers may, and likely do, associate the color orange with self-storage services, they do not associate the color with a single provider of those services.   As such, Defendant cannot plausibly claim the color, or any particular application of the color, has acquired distinctiveness as an indicator of Defendant's services. As such, Defendant's claims that the color orange has acquired distinctiveness for its services are improper and false.  Defendant is attempting to pull a fast one on the USPTO, bootstraping an unsustainable claim of ownership of the color orange, and bullying other long-time users of orange trade dress.

92.    Given the extensive third-party use of the color orange in connection with self-storage services, in April 2024, U-Haul filed Letters of Protest, copies of which are attached as **Exhibit BB** attached hereto, with the USPTO against Defendant's application Ser. Nos. 88623084, 88623068, 88623262, 88746009, 88623145, 88623045, and 88746025 to register the following orange trade dress below. The Letters of Protest informed the USPTO of the extensive use of the color orange in connection with self-storage services and facilities to provide the USPTO with facts necessary for it to determine whether Defendant's purported trademarks for orange building features, signage and displays failed to function as a source identifier for Defendant's services recited in the subject applications:

| Mark | Ser. No. | Goods and Services |
|---|---|---|
|  | 88623084 | Class 39: Providing self-storage facilities for others; renting and leasing of private storage spaces; renting and leasing of climate-controlled storage spaces; storage of goods |

| Mark | Ser. No. | Goods and Services |
|---|---|---|
| The mark consists of the color orange as used in connection with self-storage services as applied on buildings, signage, awnings, canopies, furnishings, displays, and countertops. | | |
|  | 88623068 | Class 39: Providing self-storage facilities for others; Renting and leasing of private storage spaces with limited access; Renting and leasing of climate-controlled storage spaces with limited access; storage of goods |
|  | 88623262 | Class 39: Providing self-storage facilities for others; Renting and leasing of storage spaces; Storage of goods |
|  | 88746009 | Class 39: Providing self-storage facilities for others; Renting and leasing of private storage spaces; Renting and leasing of climate-controlled storage spaces; Storage of goods |
|  The mark consists of the color orange as applied to business signage | 88623145 | Class 39: Providing self-storage facilities for others; Renting and leasing of private storage spaces; Renting and leasing of climate-controlled storage spaces; Storage of goods |

| Mark | Ser. No. | Goods and Services |
|------|----------|--------------------|
|  | 88623045 | Class 39: Providing self-storage facilities for others; Renting and leasing of private storage spaces; Renting and leasing of climate-controlled storage spaces; Storage of goods |
|  | 88746025 | Class 39: Providing self-storage facilities for others; Renting and leasing of private storage spaces; Renting and leasing of climate-controlled storage spaces; Storage of goods |

93.     In support of the letters of protest, U-Haul submitted printouts from the website https://everyoneusesorangestoragedoors.com/, the domain for which U-Haul registered and which U-Haul created and operates. The contents of those website printouts demonstrated that the color orange is used by hundreds of independent locations owned by third parties that provide self-storage facilities around the country, and that such evidence is relevant to the issues of whether Defendant's applied for trade dress functions as a source identifier and whether Defendant has substantially exclusive use of the applied for trade dress. *See* **Exhibits BB and CC**.

94.     Specifically, the evidence submitted with the letters of protest identifies, by way of example only, the following:

- More than 800 independent locations using orange on their buildings (including on the storage doors on the outside of the building) in connection with storage services; and

- More than 200 independent locations using orange signage, awnings, canopies, displays and the like in connection with storage services.

*See* **Exhibit BB**.

95.     The USPTO issued Letter of Protest Memorandums in connection with Defendant's application Ser. Nos. 88623084 and 88623068 stating that the evidence submitted with U–Haul's Letters of Protest is relevant to the Examining Attorney's refusal to register the applied-for trade dress on the ground that the trade dress is a non-distinctive color mark that

does not function as a service mark. Copies of the USPTO's Letter of Protest Memorandums are attached hereto as **Exhibit DD**.

## DEFENDANT'S ALLEGATIONS OF INFRINGEMENT, DILUTION, AND DEMANDS THAT U-HAUL CEASE ITS USE OF THE COLOR ORANGE IN CONNECTION WITH SELF-STORAGE SERVICES

96.     In addition to seeking to register, obtaining registrations, and fraudulently maintain registrations for various trade dress and service marks that incorporate the color orange and word marks containing the word ORANGE for self-storage and related services based on improper claims the color has acquired distinctiveness for such marks for Defendant's services, Defendant has taken additional steps to improperly seek to exclude others from using the color orange in connection with the same or similar services.

97.     On May 26, 2020, Defendant filed a Petition for Cancellation with the USPTO Trademark Trial and Appeal Board (Cancellation Proceeding No. 92074328, the "Cancellation Proceeding") seeking the cancellation of U-Haul's Registration No. 2286782 ("U-Haul's Orange Door Registration") for the trade dress below that depicts ten windows arranged along two perpendicular edges of a building with orange storage doors visible through the windows ("U-Haul's Orange Door Trade Dress"), reciting "retail store services featuring packaging and moving supplies" in Class 35 and "self-storage services; rental of moving vans and trucks" in Class 39:



A copy of Defendant's Petition for Cancellation is attached hereto as **Exhibit EE**.

98.     In its Petition, Defendant alleged that it possessed prior rights in the "Orange Door Trade Dress" and "Orange Window Design Trade Dress" pictured below and that the continued registration of U-Haul's Orange Door Trade Dress is likely to cause confusion with Defendant's alleged prior rights:

**Defendant's Alleged Orange Door Trade Dress**          **Defendant's Alleged Orange Window Design Trade Dress**



99.    The parties engaged in several years of settlement negotiations, including the exchange of multiple drafts of a settlement agreement.  During that time, Public Storage revealed its scheme to U-Haul.

100.    Among other things, Public Storage represented to U-Haul that it was originally trying to cancel U-Haul's registration so it could get its own orange registrations to go after the "mom-and-pop" small proprietor storage facilities that use the color orange to exclude the third-party proprietors from being able to use the color orange in connection with such self-storage services.  Public Storage wanted U-Haul to join this improper scheme.

101.    Among other things, during the negotiations, Public Storage tried to entice U-Haul into entering into a licensing arrangement that furthered Public Storage's scheme to go after these mom-and-pop storage facilities.  However, U-Haul refused to be a party to this scheme and the parties settlement negotiations broke down.

102.    Three days prior to the deadline for U-Haul to respond to Defendant's Petition for Cancellation, on March 15, 2024, Defendant unilaterally withdrew its Petition without prejudice. A copy of Defendant's withdrawal is attached hereto as **Exhibit FF**.

103.    Upon information and belief, Defendant's improper efforts to exclude others from using the color orange is also evidenced by Defendant's efforts to send cease and desist letters to other third-party self-storage providers demanding that they discontinue using the color orange.  Defendant's trademark enforcement efforts are so robust and sophisticated that it has outsourced such activities to a third-party consultant that specializes in such enforcement efforts.

104.    Defendant's improper efforts to exclude others from using the color orange is further demonstrated by the fact that on May 16, 2023, Defendant sent U-Haul's sister company, Repwest Insurance Company ("Repwest"), which offers insurance for self-storage units, an email alleging that Repwest was using the mark ORANGE DOOR STORAGE INSURANCE PROGRAM on its website https://www.ponderosainsurance.com/ and that such use creates and is likely to continue to cause consumer confusion as to the source of Repwest's insurance services. A copy of Defendant's email is attached hereto as **Exhibit GG**. However, Repwest was not and is not using the mark ORANGE DOOR STORAGE INSURANCE PROGRAM.

105.    Upon information and belief, Repwest's use of the PONDEROSA and Orange Door design mark pictured below, for which Repwest owns a registration (Reg. No. 5296154), prompted Defendant's letter:



106.    In response to Defendant's email, Repwest sought clarification from Defendant concerning whether Defendant objected to Repwest's use of the PONDEROSA and Orange Door design mark pictured above and also noted the given Repwest's relation to U-Haul, its promotional material relating to self-storage insurance services will include orange-colored doors. *See* **Exhibit GG**. Repwest did not receive a reply from Defendant.

107.    On July 24, 2024, Defendant sent U-Haul an email, a copy of which is attached hereto as **Exhibit HH** (the "July 24 Email"), concerning the website https://everyoneusesorangestoragedoors.com/ website claiming that U-Haul is "using ORANGE in connection with self-storage goods or services at the Domain Name and Website without authorization."

108.    The July 24 Email further made the following allegations:

- U-Haul's "unauthorized use of the ORANGE Marks or a confusingly similar variation thereof for self-storage goods or services constitutes at least trademark infringement and dilution in violation of federal and state trademark laws, and is likely to cause confusion, mistake and deception as to the potential existence of an affiliation, connection or association between you and Public Storage where none exists."

- U-Haul's "use of the ORANGE Marks in the Domain Name also violates the ICANN Uniform Domain Name Dispute Resolution Policy to which the Domain Name is subject, since you have no trademark rights or interest in the ORANGE Marks or any confusingly similar version thereof, and are using such marks for commercial gain."

- U-Haul's "actions also violate the Anticybersquatting Consumer Protection Act (15 U.S.C. §1125(d)) - a federal statute which provides a cause of action with respect to those who, with a bad faith intent to profit, register or traffic in or use domain names that are identical or confusingly similar to the trademarks of others."

*See* **Exhibit HH**.

109.    In the July 24 Email, Defendant also demanded that U-Haul do the following:

- Cease and desist from any and all use of the ORANGE Marks and orange color, including any misspellings or similarly confusing versions thereof, in the Domain Name and on the Website.

- Remove any and all references to the word ORANGE and any misspellings or confusingly similar versions thereof from any meta tags, HTML code, keyword files, SEO tags, domain names, social media content or handles, and text or other advertising materials associated with you or your business.

*See* **Exhibit HH**.

110.    In the July 24 Email, Defendant provides the following description of its alleged orange marks (collectively, "Defendant's Alleged Orange Marks") as the basis for its allegations and demands in the July 24 Email:

Public Storage is the owner of numerous trademarks, including but not limited to, the ORANGE STORAGE®, ORANGE DOOR STORAGE INSURANCE PROGRAM®, BEHIND THE ORANGE DOORS®, and ORANGE IS THE NEW SIZE® trademarks ("ORANGE Marks"). Public Storage owns exclusive trademark rights to the ORANGE Marks as a result of numerous trademark registrations, as well as its related common law rights, including U.S. Reg. Nos. 5,083,797, 5,197,479, 5,697,798, 5,697,799, and 6,598,358. The ORANGE Marks are well known among consumers and embody substantial and valuable goodwill. As such, the ORANGE Marks

65

are a valuable asset, and their protection is very important to Public Storage. Public Storage also has an obligation to consumers and those in the industry to police against the unauthorized registration and use of its marks, or marks similar thereto, and prevent consumer confusion.

111.    Notably, in the July 24 Email, Defendant asserts its registrations for the ORANGE STORAGE, ORANGE IS THE NEW SIZE, and ORANGE DOOR STORAGE INSURANCE PROGRAM and Design marks (Reg. Nos. 5083797, 5197479, and 5697799), which Defendant has fraudulently maintained (ORANGE STORAGE and ORANGE IS THE NEW SIZE) or abandoned (ORANGE DOOR STORAGE INSURANCE PROGRAM and Design) as set forth above. This is further evidence of Defendant's improper and overreaching efforts to exclude others from using the color orange and/or trademarks containing the term ORANGE.

112.    U-Haul    denies    that    its    registration    and    use    of    the <everyoneusesorangestoragedoors.com>    domain,    operation    of    the https://everyoneusesorangestoragedoors.com/ website, and/or use of the color orange and/or the word "orange" in connection with U-Haul Businesses' self-storage services violate any federal, state, or common law rights that Defendant claims to possess.

113.    First, as described above, given the extensive use of the color orange in the promotion of and on self-storage facilities by hundreds of self-storage providers, including U-Haul's longstanding and nationwide use, it is clear that the color when used in connection with such storage services does not and cannot function as a source identifier for any one particular self-storage service provider, including Defendant. Therefore, Defendant's claims that the color orange has acquired distinctiveness for its services and/or that it has an exclusive right to use the color in connection with self-storage services are improper.

114.    Moreover, U-Haul's use of the color orange and references to the color in connection with its self-storage services is not new or a recent development. As detailed above, U-Haul has extensively used the color orange in connection with the sale and promotion of its

1    self-storage services on a nationwide basis for decades without any evidence of such use
2    causing confusion as to the source of those services.

3        115.    Furthermore, Defendant's alleged Orange Marks are not famous within the
4    meaning of dilution law, and did not become famous prior to U-Haul's first use of the color
5    orange in connection with its self-storage services, and therefore do not qualify for dilution
6    protection. Further, even assuming that Defendant could somehow establish that its Alleged
7    Orange Marks are famous for purposes of dilution, U-Haul's use of the color orange and the
8    word "orange" is not likely to cause dilution of Defendants' alleged Orange Marks, either
9    through dilution by blurring or dilution by tarnishment.

10        116.    In addition, even if Defendant possessed any kind of protectable right in the
11    color orange and/or the term "orange" relating to self-storage services, any use of or reference
12    to the color orange and/or term "orange" within the < everyoneusesorangestoragedoors.com>
13    domain and the content of the https://everyoneusesorangestoragedoors.com/ website clearly
14    constitutes a fair use in that the website describes the hundreds of third-party self-storage
15    providers that use the color orange in connection with their services and also serves as criticism
16    of Defendant's improper attempt to claim exclusive rights to the color orange in connection
17    with self-storage services and/or that the color has acquired distinctiveness for Defendant's
18    self-storage services. *See* **Exhibit CC**.

19        117.    The July 24 Email makes clear that Defendant believes U-Haul's use of the
20    color orange and/or term "orange" infringes and dilutes Defendant's alleged Orange Marks.
21    However, Defendant's demands for U-Haul to cease such use are improper given Defendant's
22    lack of any exclusive right to use the color orange and/or the term "orange" in connection with
23    self-storage services. Defendant's demands and its threat to take legal action against U-Haul
24    if U-Haul does not comply with Defendant's demands clearly creates an immediate and
25    substantial controversy between the parties, and any such legal action would be unjustified and
26    wrongly interfere with U-Haul's rightful ability to continue its normal business actions.

27
28

## COUNT I

### Non-Violation of the Lanham Act Section 32, 15 U.S.C. § 1114

118.   U-Haul incorporates is prior allegations as though fully set forth herein.

119.   As the first ground for relief U-Haul seeks a declaration of non-violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, as to federal trademark infringement.

120.   U-Haul's use of the color orange and the term "orange" in connection with the https://everyoneusesorangestoragedoors.com/ website and U-Haul's business, including in connection with its self-storage services, and including on its signage, on its buildings, on its website uhaul.com and on its application, is not likely to cause confusion, mistake or deception as to the source or sponsorship of U-Haul's services, and does not violate Section 32 of the Lanham Act, 15 U.S.C. § 1114, with respect to any of Defendant's alleged rights.

121.   Defendant's assertion of its alleged Orange Marks and demand for U-Haul to cease its use of the color orange and the term "orange" creates a clear substantial and immediate controversy between the parties that is ripe for adjudication.

## COUNT II

### Non-Violation of the Lanham Act Section 43(a), 15 U.S.C. § 1125(a)

122.   U-Haul incorporates is prior allegations as though fully set forth herein .

123.   As the second ground for relief U-Haul seeks a declaration of non-violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as to false designation of origin and federal unfair competition.

124.   U-Haul's use of the color orange and the word "orange" in connection with the https://everyoneusesorangestoragedoors.com/ website and U-Haul's business, including in connection with self-storage services, and including on its signage, on its buildings, on its website uhaul.com and on its application, does not constitute a false designation of origin or federal unfair competition, is not likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of U-Haul with Defendant, or as to the origin, sponsorship, or approval of U-Haul's services, and does not violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

125.    Defendant's assertion of its alleged Orange Marks and demand for U-Haul to cease its use of the color orange and the term "orange" creates a clear substantial and immediate controversy between the parties that is ripe for adjudication.

**COUNT III**

**<u>Non-Violation of Lanham Act 43(a), 15 U.S.C. § 1125(c)</u>**

126.    U-Haul incorporates is prior allegations as though fully set forth herein .

127.    As the third ground for relief U-Haul seeks a declaration of non-violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as to dilution.

128.    Defendant's alleged Orange Marks are not famous under 15 U.S.C. § 1125(c), and did not become famous prior to U-Haul's first use of the color orange in connection with its self-storage services.

129.    U-Haul's use of the color orange and the word "orange" in connection with the https://everyoneusesorangestoragedoors.com/ website and U-Haul's business, including in connection with its self-storage services, and including on its signage, on its buildings, on its website uhaul.com and on its application, is not likely to cause dilution of Defendant's alleged Orange Marks, either through dilution by blurring under 15 U.S.C. § 1125(c)(2)(B) or dilution by tarnishment under 15 U.S.C. § 1125(c) (2)(C) and does not violate Section 43(c) of the Lanham Act.

130.    Defendant's assertion of its alleged Orange Marks and demand for U-Haul to cease its use of the color orange and the term "orange" creates a clear substantial and immediate controversy between the parties that is ripe for adjudication.

**COUNT IV**

**<u>Non-Violation of Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)</u>**

131.    U-Haul incorporates is prior allegations as though fully set forth herein .

132.    As the fourth ground for relief U-Haul seeks a declaration of non-violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

133.    Defendant's alleged Orange Marks are not distinctive and/or famous, and are not entitled to protection.

69

134.    U-Haul's <everyoneusesorangestoragedoors.com> domain is not confusingly similar to Defendant's alleged Orange Marks.

135.    U-Haul did not register the <everyoneusesorangestoragedoors.com> domain with a bad faith intent to profit from it.

136.    U-Haul's registration and use of the <everyoneusesorangestoragedoors.com> domain does not violate the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

137.    Defendant's assertion of its alleged Orange Marks and demand for U-Haul to cease its use of the color orange and the term "orange" in connection with https://everyoneusesorangestoragedoors.com/ website creates a clear substantial and immediate controversy between the parties that is ripe for adjudication.

**COUNT V**

**Non-Violation of Arizona Common Law**

138.    U-Haul incorporates is prior allegations as though fully set forth herein .

139.    As the fifth ground for relief U-Haul seeks a declaration that it is not committing trademark infringement and/or engaging in unfair competition under Arizona common law.

140.    U-Haul's use of the color orange and the term "orange" in connection with the https://everyoneusesorangestoragedoors.com/ website and U-Haul's business, including in connection with its self-storage services, and including on its signage, on its buildings, on its website uhaul.com and on its application, does not cause a likelihood of confusion, mistake or deception as to the source or origin of U-Haul's services, and does not constitute trademark infringement and/or unfair competition.

141.    Therefore, U-Haul's actions do not violate Arizona common law.

142.    Defendant's assertion of its alleged Orange Marks and demand for U-Haul to cease its use of the color orange and the term "orange" creates a clear substantial and immediate controversy between the parties that is ripe for adjudication.

**COUNT VI**

**Cancellation of the ORANGE STORAGE Registration (Reg. No. 5083797), 15 U.S.C. §**
**1119**

143.    U-Haul incorporates is prior allegations as though fully set forth herein .

144.    This is a claim for cancellation of United States Registration No. 5083797 (the ORANGE STORAGE Registration") under 15 U.S.C. § 1119.

145.    Based on U-Haul's investigation and on information and belief, Defendant knowingly and with intent to deceive the USPTO, falsely represented in Defendant's Section 8 Declaration that it filed in connection with the ORANGE STORAGE Registration that the ORANGE STORAGE mark was in *bona fide* use in United States commerce in connection with the services recited in the Registration, when it was not.

146.    As a result of Defendant's submission of the foregoing fraudulent Section 8 Declaration, the USPTO relied on Defendant's false statements, accepted Defendant's Section 8 Declaration, and maintained the ORANGE STORAGE Registration.

147.    Defendant's material misrepresentations to the USPTO in connection with the Section 8 Declaration, were designed to maintain the ORANGE STORAGE Registration when the registered mark was not in use in United States commerce, and constituted fraud on the USPTO that justifies cancellation of the ORANGE STORAGE Registration pursuant to 15 U.S.C. § 1119.

148.    In addition, Defendant has ceased use of the ORANGE STORAGE mark in commerce and, on information and belief, has no intent to resume such use.  Therefore, Defendant has abandoned the ORANGE STORAGE mark. Accordingly, the ORANGE STORAGE Registration should be cancelled in its entirety due to Defendant's abandonment of the mark pursuant to 15 U.S.C. § 1119.

149.    U-Haul has been, and will continue to be, harmed by the continued registration of the ORANGE STORAGE Registration as Defendant relies in part on this Registration as the basis for its infringement and dilution allegations against U-Haul in its July 24 Email.

150.    In view of the foregoing, the ORANGE STORAGE Registration should be cancelled in its entirety pursuant to 15 U.S.C. § 1119.

**COUNT VII**

**Cancellation of the ORANGE IS THE NEW SIZE Registration (Reg. No. 5197479), 15 U.S.C. § 1119**

151. U-Haul incorporates is prior allegations as though fully set forth herein.

152. This is a claim for cancellation of United States Registration No. 5197479 (the ORANGE IS THE NEW SIZE Registration") under 15 U.S.C. § 1119.

153. Based on U-Haul's investigation and on information and belief, Defendant knowingly and with intent to deceive the USPTO, falsely represented in Defendant's Section 8 Declaration it filed in connection with the ORANGE IS THE NEW SIZE Registration that the ORANGE IS THE NEW SIZE mark was in *bona fide* use in United States commerce in connection with the services recited in the Registration, when it was not.

154. As a result of Defendant's submission of the foregoing fraudulent Section 8 Declaration, the USPTO relied on Defendant's false statements, accepted Defendant's Section 8 Declaration, and maintained the ORANGE IS THE NEW SIZE Registration.

155. Defendant's material misrepresentations to the USPTO in connection with the Section 8 Declaration, were designed to maintain the ORANGE IS THE NEW SIZE Registration when the registered mark was not in use in United States commerce, and constituted fraud on the USPTO that justifies cancellation of the ORANGE IS THE NEW SIZE Registration pursuant to 15 U.S.C. § 1119.

156. In addition, Defendant has ceased use of the ORANGE IS THE NEW SIZE mark in commerce and, on information and belief, has no intent to resume such use. Therefore, Defendant has abandoned the ORANGE IS THE NEW SIZE mark. Accordingly, the ORANGE IS THE NEW SIZE Registration should be cancelled in its entirety due to Defendant's abandonment of the mark pursuant to 15 U.S.C. § 1119.

157. U-Haul has been, and will continue to be, harmed by the continued registration of the ORANGE IS THE NEW SIZE Registration as Defendant relies in part on this Registration as the basis for its infringement and dilution allegations against U-Haul in its July 24 Email.

158.    In view of the foregoing, the ORANGE IS THE NEW SIZE Registration should be cancelled in its entirety pursuant to 15 U.S.C. § 1119.

<strong>COUNT IX</strong>

<strong><u>Cancellation of the Registration for the ORANGE DOOR STORAGE INSURANCE PROGRAM and Design Mark (Reg. No. 5697799), 15 U.S.C. § 1119</u></strong>

159.    U-Haul incorporates is prior allegations as though fully set forth herein.

160.    On information and belief, Defendant has abandoned the ORANGE DOOR STORAGE INSURANCE PROGRAM and Design mark that is the subject of Reg. No. 5697799 by discontinuing use of the mark with no intent to resume such use.

161.    U-Haul has been, and will continue to be, harmed by the continued registration of the ORANGE DOOR STORAGE INSURANCE PROGRAM and Design mark that is the subject of Reg. No. 5697799 as Defendant relies in part on this Registration as the basis for its infringement and dilution allegations against U-Haul in its July 24 Email.

162.    In view of the foregoing, Defendant's Registration No. 5697799 for the ORANGE DOOR STORAGE INSURANCE PROGRAM and Design mark should be cancelled in its entirety pursuant to 15 U.S.C. § 1119.

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, U-Haul respectfully requests that the Court enter judgment in U-Haul's favor on each count of this Complaint as follows:

A.    That the Court declare that U-Haul's use of the color orange and/or the word "orange" in connection with the https://everyoneusesorangestoragedoors.com/ website and U-Haul Businesses' services, including in connection with its self-storage services, and including on signage, on buildings, on the website uhaul.com, on mobile applications, and other marketing materials, does not constitute federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, with respect to any alleged rights owned by Defendant.

B.    That the Court declare that U-Haul's use of the color orange and/or the word "orange" in connection with the https://everyoneusesorangestoragedoors.com/ website and U-

73

Haul Businesses' services, including in connection with its self-storage services, and including on signage, on buildings, on the  website uhaul.com, on mobile applications, and other marketing materials, does not constitute federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), with respect to any alleged rights owned by Defendant.

C.    That the Court declare that U-Haul's use of the color orange and/or the word "orange" in connection with the https://everyoneusesorangestoragedoors.com/ website and U-Haul Businesses' services, including in connection with its self-storage services and including on signage, on buildings, on the website uhaul.com, on mobile applications, and other marketing materials, does not constitute federal dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), with respect to any alleged rights owned by Defendant.

D.    That the Court declare U-Haul's registration of the <everyoneusesorangestoragedoors.com> domain does not constitute a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), with respect to any alleged rights owned by Defendant.

E.    That the Court declare that U-Haul's use of the color orange and/or the word "orange" in connection with the https://everyoneusesorangestoragedoors.com/ website and U-Haul Businesses' services, including in connection with self-storage services, and including on signage, on buildings, on the website uhaul.com, on mobile application, and other marketing materials, does not constitute trademark infringement and/or unfair competition under Arizona common law with respect to any alleged rights owned by Defendants.

F.    That the Court issue an order directing the USPTO to cancel Defendant's United States Registration No. 5083797 for the ORANGE STORAGE mark.

G.    That the Court issue an order directing the USPTO to cancel Defendant's United States Registration No. 5197479 for the ORANGE IS THE NEW SIZE mark.

H.    That the Court issue an order directing the USPTO to cancel Defendant's United States Registration No. 5697799 for the ORANGE DOOR STORAGE INSURNCE PROGRAM and Design mark.

I. That, because of the exceptional nature of this case, the Court award U-Haul its reasonable attorneys' fees and costs relating to this action, pursuant to 15 U.S.C. § 1117.

J. That the Court award such other and further relief as this Court deems appropriate.

DATED this 12th day of November, 2024.

BARNES & THORNBURG, LLP

By: /s/ John A. Cullis
    John A. Cullis
    Lawrence E. James

MURPHY CORDIER CASALE AXEL PLC

By: /s/ Jennifer J. Axel
    Jennifer J. Axel
    Maria F. Hubbard
    *Attorneys for Plaintiff U-Haul International, Inc.*