**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| U-Haul International Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Public Storage Operating Company,<br><br>Defendant. | No. CV-24-03160-PHX-MTL<br><br>**ORDER** |

U-Haul International Incorporated ("U-Haul") and Public Storage Operating Company ("Public Storage") are in the business of operating self-storage unit facilities. Both use the color and word "orange" in their trademarks, trade dress, and marketing materials. Public Storage fired the first volley in this battle, sending U-Haul a letter demanding that it cease and desist from using orange. U-Haul fired back with this multi-count lawsuit, seeking declarations that its use of orange is lawful.

Now before the Court is Public Storage's Motion to Dismiss or, in the Alternative, to Strike Portions of the Complaint (Doc. 21). Public Storage argues the Amended Complaint falls short of establishing subject matter jurisdiction and does not state a claim upon which relief can be granted. According to Public Storage, the Amended Complaint "fails to identify a genuine threat of liability or other concrete injury *to U-Haul*" that supports federal jurisdiction. (Doc. 21 at 7.) U-Haul argues, in response, the Amended Complaint alleges several well-pleaded facts showing Public Storage leveled a concrete threat of litigation, justifying its reliance on the Declaratory Judgment Act to obtain a

1  judicial determination on whether its use of the color and word orange violates Public
2  Storage's intellectual property rights. (Doc. 24 at 2.)

3      The Court finds that the Amended Complaint sufficiently alleges federal jurisdiction
4  and that the claims for relief are supported by well-pleaded facts. As explained below, the
5  Motion will be denied.

6  **I.    BACKGROUND**

7      The following facts are taken from the allegations in the Amended Complaint (Doc.
8  13), which the Court accepts as true when considering the present Motion. *See Safe Air for*
9  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

10      U-Haul has prominently featured the color orange in its self-moving and self-storage
11  businesses since 1945. (Doc. 13 ¶ 16.) Orange appears on U-Haul's vehicles, its facilities,
12  and its marketing materials. (*Id.* ¶¶ 17-22.) Due to its prominence, U-Haul has common
13  law rights to trademarks and trade dress featuring orange and invests "substantial resources
14  developing, advertising, promoting, and marketing" orange-based trademarks and trade
15  dress registered with the United States Patent and Trademark Office ("USPTO"). (*See id.*
16  ¶¶ 24-26.) As an example, U-Haul promotes some of its services through trademarks and
17  trade dress featuring orange storage doors. (*Id.* ¶ 26, ¶ 32, ¶ 35.)

18      Public Storage has been "U-Haul's direct competitor in the self-storage market" for
19  at least thirty years. (*Id.* ¶ 38, ¶ 40.) For most of that time, Public Storage marketed itself
20  using the colors purple, yellow, and orange. (*Id.* ¶¶ 40-41.) But around September 2019, it
21  "made a distinct shift in its marketing efforts by" switching entirely to the color orange on
22  its self-storage facilities and marketing materials. (*Id.* ¶ 42, ¶ 45.) Part of that shift included
23  filing "applications for trade dress and service marks that incorporate and solely feature the
24  color orange or feature the word 'orange' for self-storage and related services." (*Id.* ¶ 45.)
25  Another part involved Public Storage addressing orange-based trademarks and trade dress
26  already registered with the USPTO.

27
28

Public Storage acquired the marks ORANGE STORAGE and ORANGE IS THE NEW SIZE from a nonparty in November 2018. (*See id.* ¶ 54, ¶ 69.) Then, in May 2020, it filed a petition with the USPTO's Trademark Trial and Appeal Board ("TTAB") to cancel trade dress registered to U-Haul. (*Id.* ¶ 99; Doc. 13-3 at 239.) The petition challenged U-Haul's registration of "ten windows arranged along two perpendicular edges of a building with orange storage doors visible through the windows"—pictured below:



(Doc. 13¶ 99; Doc. 13-3 at 239.) Public Storage argued it had prior rights to the trade dress and asked the TTAB to cancel U-Haul's registration so it could register its own orange storage door trade dress[1]—pictured below:



(*See* Doc. 13-3 at 241-42.)

The petition to cancel prompted many years of settlement negotiations between the parties. (Doc. 13 ¶ 101.) Public Storage maintained throughout these negotiations that U-Haul's trade dress was confusingly similar to its proposed registration. (*Id.*) It also represented it was "trying to cancel U-Haul's registration so it could get its own orange registration to go after 'mom-and-pop' small proprietor storage facilities that use the color orange" and prevent third-party proprietors from using the color orange in connection with self-storage services in the future. (*See id.* ¶ 103.)

---

[1] Public Storage argued its earliest use of orange storage door trade dress was August 1972, which predates U-Haul's registration date of October 1999 and its alleged first use in commerce of October 1992. (Doc. 13-3 at 239-40.)

While settlement negotiations were ongoing, Public Storage sent cease-and-desist letters to "third-party self-storage providers demanding [] they discontinue using the color orange." (*Id.* ¶ 105.) One such letter was sent to "U-Haul's sister company," Repwest Insurance, in May 2023. (*Id.* ¶ 106; Doc. 13-3 at 248.) Public Storage alleged Repwest's website was misusing its ORANGE DOOR STORAGE INSURANCE PROGRAM design mark—a mark Public Storage obtained in 2016 for its "tenant storage insurance program." (*Id.* ¶ 83; Doc. 13-3 at 248-49.) Public Storage threatened legal action if Repwest did not disable the website. (Doc. 13-3 at 249.) Repwest responded, explaining its relation to U-Haul meant practically all its digital assets involve orange storge doors. (*See id.*) Public Storage never responded to Repwest's communication. (Doc. 13 ¶ 108.)

On March 15, 2024, Public Storage withdrew its petition to cancel. (*Id.* ¶ 109.) Public Storage's Chief Legal Officer then emailed U-Haul's General Counsel, explaining the withdrawal was "a good faith gesture to show [its] goal is not to disrupt U-Haul's business, and to allow room" for further "settlement negotiations outside any proceeding[s]." (*Id.* ¶ 110.) It continued Public Storage was hopeful they could "still move [] forward in a productive manner [] to address each other's concerns." (*Id.*)

About a month later, U-Haul filed seven letters of protest with the USPTO. (*Id.* ¶ 94; Doc. 13-3 at 4-28.) U-Haul challenged applications from Public Storage seeking to register trade dress incorporating the color orange in connection with self-storage services. The letters cited the website https://everyoneusesorangestoragedoors.com (the "Orange Storage Door Website"), which U-Haul said demonstrates "the color orange is used by hundreds of independent locations that provide self-storage facilities around the country." (Doc. 13-3 at 5, 30.) Each letter disclosed U-Haul created the Orange Storage Door Website and still operates it. (*See*, *e.g.*, *id.* at 5 n.2.) Through the website, U-Haul sought to demonstrate the proposed registrations did not function as trademarks and Public Storage did not have substantially exclusive use of the marks.[2] (*See id.* at 5.) In one of the letters, U-Haul

---

[2] The phrase "failure to function" is a term of art used by the USPTO and Trademark Board to describe instances where a proposed registration does not "perform the job of identification: to identify one source and distinguish it from other sources." 2 McCarthy on Trademarks and Unfair Competition § 19:4.50 (5th ed. 2025).

challenged the orange storage door trade dress Public Storage cited in its petition to cancel. (*Id.* at 20.)

Public Storage sent U-Haul a cease-and-desist letter about the Orange Storage Door Website on July 24, 2024. (Doc. 13 ¶ 113; Doc. 13-3 at 251.) The letter said the website was "using ORANGE in connection with self-storage goods or services . . . without authorization." (Doc. 13-3 at 251.) And that the use of orange "constitute[d] at least trademark infringement and dilution in violation of federal and state trademark laws, and is likely to cause confusion, mistake, and deception." (*Id.*) The letter stated the website would cause confusion with Public Storage's other registered marks: the ORANGE STORAGE, ORANGE IS THE NEW SIZE, ORANGE DOOR INSURANCE PROGRAM, and BEHIND THE ORANGE DOORS marks. (*Id.*) The letter closed by demanding the website "cease and desists from any and all use of the ORANGE Marks and orange color." (*Id.* at 251.) If Public Storage did not receive a response within ten days, it warned it "may take necessary legal steps to protect [its] rights." (*Id.* at 251-52.)

U-Haul responded by filing this lawsuit. The Amended Complaint alleges eight causes of action against Public Storage. Counts I-V seek declaratory relief that U-Haul did not violate the Lanham Act, Anticybersquatting Consumer Protection Act, or Arizona common law. (Doc. 13 ¶ 126, ¶ 130, ¶ 134, ¶ 139.) Counts VI-VII seek to cancel the ORANGE STORAGE, ORANGE IS THE NEW SIZE, and ORANGE STORAGE DOOR INSURANCE PROGRAM marks. (*Id.* ¶ 157, ¶ 165, ¶ 169.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a district court to dismiss claims for lack of subject matter jurisdiction. Jurisdictional challenges under Rule 12(b)(1) can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Facial challenges "accept[] the truth of [a] plaintiff's allegations but assert[] that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). Factual challenges, by

contrast, "contest[] the truth of [a] plaintiff's allegations, usually by introducing evidence outside the pleadings." *Id.* A district court may only look beyond the pleadings when a defendant brings a factual challenge to jurisdiction. *White*, 227 F.3d at 1242. A factual challenge also allows a district court to "not presume the truthfulness of the plaintiff['s] allegations." *Id.*

### B.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A district court may dismiss claims lacking a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Sufficient factual allegations are those that, when taken as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Plausibility is more than mere possibility; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations "are taken as true and construed in the light most favorable to the [plaintiff]." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted).

## III.    ANALYSIS

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Public Storage argues U-Haul lacks standing to pursue relief under the Declaratory Judgment Act. (Doc. 21 at 16.) The Declaratory Judgement Act states "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The language "case of actual controversy" denotes the type of cases and controversies justiciable under Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

A justiciable controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citation omitted). A live controversy does not require an actual threat of litigation. *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 944 (9th Cir. 1981). It arises when a "plaintiff has a real and reasonable apprehension" they will be subject to liability if they continue with their current course of conduct. *See id.*

The reasonable apprehension analysis focuses on the position and perceptions of a plaintiff. *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982). No specific act or intention automatically constitutes a threat of litigation. *Id.* The focus instead remains flexible, looking at a defendant's actions as a whole within the circumstances of each case. *See S.D. Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1024 (9th Cir. 2023).

### 1.    Facial Challenge

Public Storage first challenges the Amended Complaint on facial grounds, arguing it fails to allege a substantial and immediate controversy between itself and U-Haul. (Doc. 21 at 16.)

The Amended Complaint provides five bases for standing:

> (i)    [Public Storage's] improper claims to exclusive rights to the color orange and the term "orange" in connection with self-storage services;
>
> (ii)    unresolved "concerns" regarding U-Haul's use and registration of the color orange;
>
> (iii)    submission of fraudulent and manufactured evidence of *bona fide* use of its ORANGE trademarks to the USPTO in order to maintain trademark registrations used to bully others from using the color and term "orange" in connection with self-storage services;
>
> (iv)    transition from its orange and purple trade dress colors to the color orange with a hue more closely similar to U-Haul's trade dress color; and
>
> (v)    demands for U-Haul to cease its use of the color orange and the term "orange."

(Doc. 13 ¶ 124.) To survive Public Storage's facial challenge, these bases must show U-Haul reasonably feared adverse legal action when commencing this lawsuit. *See S.D. Cnty. Credit Union*, 65 F.4th at 1024.

### i.    Bases (i) and (iii): Trademark Activity

Public Storage argues bases (i) and (iii) "cannot possibly establish jurisdiction as they show that U-Haul is seeking to champion the rights of *other* participants in the self-storage industry, which U-Haul has no standing to do." (Doc. 21 at 17.) In response, U-Haul clarifies its "allegations are relevant to the jurisdictional analysis" because "[m]ultiple courts in this Circuit have found a defendant's enforcement actions against even unrelated third parties [can] be evidence of a plaintiff's reasonable apprehension of being sued." (Doc. 24 at 25-26.)

Enforcement history, by itself, cannot create a reasonable apprehension of suit. *See Xerox Corp. v. Apple Comput., Inc.*, 734 F. Supp. 1542, 1547 (N.D. Cal. 1990) ("Apple's suit against Microsoft and Hewlett-Packard *alone* cannot reasonably be viewed as giving rise to an 'apprehension of liability on Xerox' part, since the defendants therein have no relationship to Xerox . . . ."). But it can be one circumstance—among others—that form a plaintiff's fear of liability. *See Sherwood Med. Indus., Inc. v. Deknatel, Inc.*, 512 F.2d 724, 727-28 (8th Cir. 1975); *Xerox Corp.*, 734 F. Supp. at 1547 (relying on *Sherwood Medical Industries, Inc.*). The question in each declaratory judgment case "is whether the facts alleged, under all the circumstances, show" a controversy between the parties. *Medimmune*, 549 U.S. at 127 (citation omitted). This means a district court must look at the entire course of an action, and a defendant's relevant conduct within that timeframe, before determining if apprehension exists. *See Sherwood Med. Indus., Inc.*, 512 F.2d at 728.

The Amended Complaint alleges Repwest is a "sister company" of U-Haul. (Doc. 13 ¶ 106.) Construing this allegation in U-Haul's favor means the two companies are connected. *Leite*, 749 F.3d at 1121 (stating a "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)"). That connection, however, is not enough to say Public Storage's cease-and-desist letter to Repwest is anything more than relevant

1    enforcement history. Other areas of the Amended Complaint demonstrate the letter only

2    concerns one of the marks at issue in this litigation. (*See, e.g.*, Doc. 13 ¶ 83.) What is more,

3    the letter was sent about a year before the filing of this lawsuit. (Doc. 13-3 at 248.)

4         Yet the letter and other allegations relating to Public Storage's enforcement history

5    provide relevant context to the events preceding this lawsuit. A reasonable person in

6    U-Haul's position would look at those actions and worry Public Storage was serious about

7    enforcing its intellectual property rights. The actions further occurred after Public Storage

8    started transitioning to orange-based marketing materials, which the Amended Complaint

9    sets as the relevant timeframe for this suit. *See Sherwood Med. Indus., Inc.*, 512 F.2d at

10   728. The Court finds Public Storage's enforcement history provides some evidence

11   supporting U-Haul reasonably feared suit.

### ii.    Basis (ii): Unresolved "Concerns"

13        Public Storage argues its "withdrawn cancellation petition provides no basis for

14   jurisdiction" because "the threat or actual filing of an opposition or cancellation proceeding

15   against [a] plaintiff's trademark registration . . . is not, by itself, sufficient to create an

16   actual controversy." (Doc. 21 at 18 (quoting 5 J. Thomas McCarthy, *McCarthy on*

17   *Trademarks and Unfair Competition* § 32:52 (5th ed. 2025) (citation modified)). U-Haul

18   responds the cancellation petition shows Public Storage believes it has prior use of the

19   orange storage door trade dress. (Doc. 24 at 14.)

20        "[S]imple opposition proceeding[s] in the Patent and Trademark Office generally

21   will not raise a real and reasonable apprehension of suit." *Chesebrough-Pond's, Inc.*, 666

22   F.2d at 396. Cancellation petitions are simple opposition proceedings. *See id.* And prior

23   use is a common basis for bringing a petition to cancel. *See S.D. Cnty. Credit Union*, 65

24   F.4th at 1032 (rejecting the argument a controversy occurs anytime "a party seeks to cancel

25   a registration due to the prior use of a common-law mark"). The Court finds Public

26   Storage's withdrawn cancellation petition provides minimal—if any—evidence supporting

27   U-Haul reasonably feared suit. Any other finding would "undercut[] and short-circuit[] the

28   power of the Trademark Board to consider such cases." *Id.* at 1026 (citation omitted).

U-Haul further argues the cancellation petition combines with a later email from Public Storage to justify its fear of suit. (Doc. 24 at 15.) The email came after Public Storage withdrew its petition and the parties had undergone four years of settlement negotiations. (Doc. 13 ¶ 109, ¶ 101, ¶ 111.) It said Public Storage's purpose in filing the petition was "not to disrupt U-Haul's business" but to provide a better mechanism for acting against "third-party copycat self-storage companies."[3] (*See* Doc. 21-3 at 5.) It continued Public Storage withdrew the petition "[a]s a good faith gesture" and "to allow room to continue . . . settlement negotiations outside any proceeding[s]." (*Id.*) Finally, the email explained Public Storage was hopeful it and U-Haul could "still move [] forward in a productive manner and [] address each other's concerns." (*Id.*)

In *Dunn Computer Corp. v. Loudcloud, Inc.*, the court found mere invitations to negotiate, without the threat of litigation, do not create a reasonable fear of suit. 133 F. Supp. 2d 823, 828 (E.D. Va. 2001). Other courts in this circuit have relied on *Dunn Computer Corp.* to conclude cease-and-desist letters inviting a plaintiff to respond and settle a matter do not confer standing. *See, e.g.*, *Eddy v. Citizenhawk, Inc*, No. 13-cv-00858-MMA (JMA), 2013 WL 12114488, at *3 (S.D. Cal. Nov. 19, 2013). This reasoning extends to communications where one party invites the other to resolve their issues outside of formal proceedings. *See Dunn Comput. Corp.*, 133 F. Supp. 2d at 828.

The email explicitly states Public Storage desires to continue negotiations outside formal proceedings. (Doc. 21-3 at 5.) There is no explicit or implied threat of suit. In fact, the email explains Public Storage's goal is to have a mechanism that allows it to go after "third party copycat self-storage companies," an assertion that communicates a desire not to litigate against U-Haul itself. (*Id.*)

U-Haul places much weight on the email stating there are lingering "concerns" that require further "settlement negotiations." (Doc. 24 at 15.) But within the email's broader context, Public Storage's recognition of lingering "concerns" referred to its invitation to

---

[3] The Amended Complaint only includes portions of the email. But the Court incorporated the entire email into the Amended Complaint by reference based on U-Haul's non-opposition. (Doc. 37.)

negotiate and did not evidence an intention to sue. *See Dunn Comput. Corp*., 133 F. Supp. 2d at 828. Moreover, to the extent U-Haul views the email as admitting there is a dispute between the parties, that argument ignores jurisdiction requires a dispute plus a plaintiff feeling apprehensive of litigation. *See Societe de Conditionnement en Aluminium*, 655 F.2d at 944. Even assuming the email admits there is a dispute, no reasonable person in U-Haul's position would view Public Storage's words or actions to mean a lawsuit was likely. The email explicitly states the opposite, and the actions indicate a desire to deescalate the situation. The Court finds the cancellation petition and email, even when combined, provide minimal evidence supporting U-Haul reasonably feared suit.

### iii.    Basis (iv): Change to a Closer Shade of Orange

Public Storage argues nothing in the Amended Complaint suggests it altered its shade of orange or that such a change "could be construed as a threat of liability for *U-Haul*." (Doc. 21 at 19-20.) U-Haul responds that, at the pleading stage, Public Storage cannot dispute that it changed its shade of orange. (Doc. 24 at 17-18.)

U-Haul correctly notes Public Storage's argument is factual in nature. U-Haul, however, fails to explain how a change of color amounts to a reasonable apprehension of suit. The best the Court can find is the explanation in *Chesebrough-Pond's, Inc.* that "the business relationship of the parties" can inform a plaintiff's apprehension and *San Diego County Credit Union*'s suggestion apprehension can arise from business practices combined with other evidence. 666 F.2d at 397; 65 F.4th at 1027-28. But neither case suggests a business relationship or practice, standing alone, creates apprehension. They also involve circumstances different from this lawsuit. *See Chesebrough-Pond's, Inc*, 666 F.2d at 397 (explaining the plaintiff's actions were chilled); *S.D. Cnty. Credit Union*, 65 F.4th at 1028 (explaining business practices were relevant because "a senior registrant can enjoin a junior user of an infringing mark if it is likely that the senior registrant will expand into the junior user's market"). The Court finds Public Storage changing to a closer shade of orange provides minimal evidence supporting U-Haul reasonably feared suit.

1

#### iv.    Basis (v): Cease-and-Desist Letter

2    Public Storage argues U-Haul cannot base jurisdiction on the cease-and-desist letter

3    about the Orange Storage Door Website because it is a "fake website U-Haul concocted,"

4    and "U-Haul does not . . . claim that [Public Storage] understood it was making any

5    demands *of U-Haul*." (*See* Doc. 21 at 20-21.) U-Haul argues Public Storage's intent is

6    immaterial because standing requires examining the perceptions of the plaintiff. (Doc. 24

7    at 16.) It also argues that the Orange Storage Door Website is legitimate. (*Id.* at 17.)

8    Cease-and-desist letters are a common starting point for declaratory judgment

9    actions. *See, e.g.*, *Chesebrough-Pond's, Inc.*, 666 F.2d at 396-97. Letters alleging a

10   likelihood of confusion or stating a prima facie case of trademark infringement can create

11   apprehension of suit. *Id.* But as with all things related to declaratory jurisdiction, a district

12   court must look at the broader context surrounding a letter to see if apprehension was

13   reasonable. *See S.D. Cnty. Credit Union*, 65 F.4th at 1027-28.

14   The cease-and-desist letter over the Orange Storage Door Website stated its use of

15   orange in connection with self-storage services "constitute[d] at least trademark

16   infringement . . . in violation of federal and state trademark law" and was "likely to cause

17   confusion" with customers. (Doc. 13-3 at 251.) It also specifically threatened the possibility

18   of "necessary legal steps" to protect Public Storage's intellectual property rights if U-Haul

19   did not "cease and desist from any and all use of the ORANGE Marks and orange color"

20   on the website. (*Id.* at 251-52.) Other courts have found language much less threatening

21   than this creates a reasonable apprehension of suit. *See, e.g.*, *FN Cellars, LLC v. Union*

22   *Wine Co.*, 2015 WL 5138173, at * 3 (N.D. Cal. Sept. 1, 2015) (finding apprehension based

23   on a letter that "laid out the elements of a potential infringement action[,] . . . express[ed]

24   certainty about an obvious likelihood of confusion between the parties[,]" and threatened

25   proceeding "with a cancellation action at the earliest possible juncture").

26   Public Storage argues its letter created no apprehension because the Orange Storage

27   Door Website is "fake." (Doc. 21 at 20-21.) This argument implies U-Haul manufactured

28   the website to prompt a cease-and-desist letter. (*See id.*) The Amended Complaint,

- 12 -

however, alleges U-Haul created the Orange Storage Door Website to protest seven applications Public Storage filed with the USPTO. (Doc. 13 ¶ 94.) Copies of those protests, with reference to the Orange Storage Door Website and U-Haul's ownership of it, are attached to the Amended Complaint. (Doc. 13-3 at 4-28.) Any arguments relating to the truthfulness of these allegations and U-Haul's actual intent are fact-based inquires not appropriate at this stage. *Leite*, 749 F.3d at 1121 (stating facial challenges under Rule 12(b)(1) accept the truthfulness of the allegations in the operative complaint).

Public Storage further argues the letter cannot cause apprehension because it had no knowledge U-Haul owned the Orange Storage Door Website. (Doc. 26 at 10-11.) There are two problems with this argument. First, as explained above, the Amended Complaint shows U-Haul disclosed its ownership of the website in USPTO filings where Public Storage was a party. (*See, e.g.*, Doc. 13-3 at 5 n.2.) Construing this fact in U-Haul's favor requires assuming Public Storage knew U-Haul owned the website. *Leite*, 749 F.3d at 1121.

Second, accepting Public Storage's argument would take the focus away from the "position and perceptions of" U-Haul. *Chesebrough-Pond's, Inc.*, 666 F.2d at 396. *Societe de Conditionnement en Aluminium* rejected a similar argument when a defendant attempted to justify a threatening communication by saying its employee did not have authority to make the statement. 655 F.2d at 945. The court explained it was unnecessary to decide the employee's authority because the context showed plaintiff reasonably believed the threat was genuine. *Id.* Here too, U-Haul's prior filings with the USPTO mean it was reasonable to assume Public Storage knew U-Haul owned the Orange Storage Door Website and intended for its cease-and-desist letter to go to U-Haul.

The Court finds the cease-and-desist letter provides strong evidence supporting U-Haul reasonably feared suit. It will analyze the letter within the context of Public Storage's other actions to determine if standing exists. *See S.D. Cnty. Credit Union*, 65 F.4th at 1026 (stressing the importance of context in the reasonable apprehension analysis).

1          **v.        Analysis Under All the Circumstances**

2          A district court must take a comprehensive view of the alleged facts before

3    determining if standing exists. *See MedImmune Inc.*, 549 U.S. at 127. When a trademark

4    is being used in commerce, standing does not require a substantial showing of

5    apprehension. *See Societe de Conditionnement en Aluminium*, 931 F.2d at 944;

6    *Chesebrough-Pond's Inc.*, 666 F.2d at 397.

7          The cease-and-desist letter provides strong evidence U-Haul reasonably feared suit.

8    But a comprehensive view of the alleged facts requires comparing the letter against Public

9    Storage's prior email, which indicated a desire to avoid formal proceedings. After Public

10   Storage sent the email, U-Haul filed seven letters of protest with the USPTO. (Doc. 13

11   ¶ 94.) Each letter challenged a trade dress application filed by Public Storage attempting to

12   register orange trade dress for self-storage services. Each letter also cited the Orange

13   Storage Door Website as its primary source of evidence and disclosed U-Haul's ownership

14   of the website. (*See, e.g.*, Doc. 13-3 at 5, 5 n.2.) Public Storage's cease-and-desist letter

15   came about three months after U-Haul filed the letters.

16         U-Haul's letters of protest would color its understanding of the cease-and-desist

17   letter. For the first time, Public Storage was not the one going after previously registered

18   marks. It instead was in a defensive posture that required defending its filings with the

19   USPTO. A reasonable person in U-Haul's position would assume Public Storage's shift in

20   posture resulted in it changing its mind about avoiding litigation. A reasonable person

21   would also assume the cease-and-desist letter was the result of that change.

22         Public Storage's enforcement history would also color U-Haul's understanding.

23   Public Storage historically used similar cease-and-desist letters to enforce its intellectual

24   property rights. A reasonable person would assume the letter, which targeted the

25   evidentiary basis for U-Haul's letters of protest, was Public Storage continuing with its

26   prior conduct. A comprehensive view of the alleged facts supports finding U-Haul

27   reasonably feared suit.

28

1    Public Storage argues the fact U-Haul filed this lawsuit three months after receiving

2    the cease-and-desist letter means any apprehension was unreasonable. (*See* Doc. 26 at 11.)

3    It further argues apprehension was unreasonable because it "sent no further correspondence

4    and took no action against the [Orange Storage Door Website]" during that three-month

5    timeframe. (*See id.* at 11, 14-15.)

6    While Public Storage did not take any further action against the website, it also did

7    not do anything to dispel the possibility of litigation. *See Chesebrough-Pond's, Inc.*, 666

8    F.2d at 397. From U-Haul's perspective, Public Storage may have been preparing an

9    infringement lawsuit during the three-month gap. There also is nothing inherently

10   unreasonable about waiting three months to file a lawsuit when administrative proceedings

11   are ongoing. *See id.* at 395, 397 (three-year gap between the commencement of USPTO

12   proceedings and filing of a declaratory judgment action).

13   Therefore, it was reasonable for U-Haul to assume litigation was imminent based

14   on the threats in Public Storage's cease-and-desist letter. The Amended Complaint

15   adequately alleges standing to pursue declaratory relief.

16   **2.    Factual Challenge**

17   Public Storage next challenges the Amended Complaint on factual grounds, arguing

18   it has evidence disproving the Amended Complaint's otherwise well-pled allegations. (*See*

19   Doc. 21 at 16 ("U-Haul's complaint does not withstand either a facial or factual challenge

20   under Rule 12(b)(1).").)

21   When "resolving a factual attack on jurisdiction, [a] district court may review

22   evidence beyond the complaint without converting [a] motion to dismiss into a motion for

23   summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039. Factual challenges are

24   appropriate in declaratory judgment actions because jurisdiction is separate from the merits

25   of the case. *See id.* at 1040; *S.D. Cnty. Credit Union*, 65 F.4th at 1028-29 (resolving a

26   factual attack to jurisdiction in a declaratory judgment action concerning trademark

27   infringement).

28

Once a defendant brings "a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A plaintiff must support their "jurisdictional allegations with 'competent proof' under the same evidentiary standard that governs the summary judgment context." *Leite*, 749 F.3d at 1121. Competent proof is showing "by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.*

### i.    Public Storage's Evidence Opposing Standing

Public Storage presents prior versions of the Orange Storage Door Website to support its factual challenge.[4] These exhibits document the website on April 17, 2024, July 24, 2024, September 11, 2024, and November 22, 2024. The primary difference between each version is the language "(and 50+ U-Haul)" appears on the website's homepage in the September 11, 2024, version—after Public Storage sent its cease-and-desist letter. (*See* Doc. 21-2 at 4.)

Public Storage argues the exhibits demonstrate U-Haul lacks standing to pursue declaratory relief. It posits the exhibits show the Orange Storage Door Website was deliberately created to appear unrelated to U-Haul. (*Id.* at 21.) And because of that concealment, U-Haul did not fear suit based on the cease-and-desist letter. (*Id.* at 20.)

### ii.    U-Haul's Evidence Supporting Standing

U-Haul presents three declarations in response to Public Storage's factual challenge. (Docs. 24-1, 24-3, 24-6.) Relevant here, the declaration of Samuel J. Shoen, the vice chairman of U-Haul's holding company, states Repwest is a wholly owned subsidiary of U-Haul's parent corporation, and the cease-and-desist letter attached to the Amended Complaint is a true and correct copy of the one Public Storage sent to Repwest. (Doc. 24-1 ¶ 29, ¶ 37.) The declaration of Kristine Campbell, general counsel for U-Haul, states the

---

[4] Public Storages offers other exhibits, most of which were discussed in the Court's order ruling on its request for judicial notice. (Doc. 37.) Public Storage, however, does not explain how these exhibits negate standing. *See Safe Air for Everyone*, 373 F.3d at 1039 (explaining "the challenger must dispute[] the truth of the allegations" in the complaint).

email previously incorporated into the Amended Complaint by reference was the one she received from Public Storage. (Doc. 24-6 ¶ 10.) And the declaration of Stephen R. Winkelman, assistant general counsel for U-Haul, states the cease-and-desist letter attached to the Amended Complaint is the one Public Storage sent to U-Haul about the Orange Storage Door Website. (Doc. 24-3 ¶ 31.) The Winkelman declaration further states the letters of protests attached to the Amended Complaint are the ones U-Haul filed with the USPTO after Public Storage sent its email about avoiding formal proceedings. (*Id.* ¶ 27.) The Court relied on these documents when resolving Public Storage's facial challenge to standing. The declarations allow the Court to rely on them again to resolve Public Storage's factual challenge. *See Norkunas v. Wynn L.V. LLC*, 343 F. App'x 269, 270 (9th Cir. 2009) (explaining declarations are additional evidence that can support standing).

The declarations provide additional evidence not found in the Amended Complaint. The Winkelman declaration states the parties "exchanged numerous drafts of a settlement agreement" during their almost four years of negotiations.  (Doc. 24-3 ¶ 17, ¶¶ 21-22.) It says settlement discussions broke down because Public Storage "would not agree that there was no likelihood of confusion, would not agree to not use any registrations they obtained against U-Haul, and would not stipulate to not bring a lawsuit against U-Haul or its affiliates in the future based on their use of the color orange in connection with self-storage services." (*Id.*) All three declarations also state U-Haul believes Public Storage will sue over its use of orange. (*See* Doc. 24-1 ¶ 46; Doc. 24-3 ¶ 25; Doc. 24-6 ¶ 19.)

U-Haul argues this evidence satisfies its burden of proving subject matter jurisdiction. (*See* Doc. 24 at 14-15.)

### iii.    Analysis Under All the Circumstances

The Court has already found U-Haul reasonably feared suit based on the information now authenticated in the three declarations. The cease-and-desist letter provides strong evidence supporting standing because it contains explicit threats of litigation. *See Chesebrough-Pond's*, 666 F.2d at 396-97. At this stage, the question is whether the newly provided evidence changes the context of those threats to the point it is no longer

reasonable for U-Haul to assume they were genuine. *S.D. Cnty. Credit Union*, 65 F.4th at 1027.

The Winkelman declaration states settlement negotiations ended because there was a disagreement over U-Haul's "use of the color orange in connection with self-storage services" and whether that use created a "likelihood of confusion" in the marketplace. (*See* Doc. 24-3 ¶ 22.) Public Storage was under no obligation to acquiesce to U-Haul's settlement demands. *Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, 721 F. App'x 628, 630 (9th Cir. 2018). But it was reasonable for U-Haul to fear suit over this disagreement given Public Storage's previous enforcement history. (*See* Doc. 24-3 ¶ 22); *Sherwood Med. Indus. Inc.*, 512 F.2d at 728. Moreover, when Public Storage sent its first cease-and-desist letter stating similar concerns to the ones discussed during settlement negotiations, a reasonable person in U-Haul's position would assume the letter's threats were genuine. (Doc. 24-6 ¶ 19.) The additional evidence bolsters U-Haul's reasonable fear of suit.

The Court previously allowed U-Haul to supplement its evidence with a second cease-and-desist letter from Public Storage. (Doc. 37.) The second letter provides minimal evidence U-Haul feared suit because a subsequent email from Tracer Managed Services indicates the letter was sent accidentally. This letter, however, shows Public Storage's continued enforcement efforts around the use of orange. Those efforts inform U-Haul's understanding of its disagreement with Public Storage and reenforces U-Haul's belief Public Storage intends to continue enforcing its intellectual property rights regardless of what happens in this lawsuit. *See Chesebrough-Pond's Inc.*, 666 F.2d at 397 (finding post-filing events can bolster a plaintiff's apprehension of suit).

The Court also allowed Public Storage to supplement the record to prevent any prejudice caused by the second letter. (Doc. 37.) Public Storage offers a declaration stating, "it has no intent to sue U-Haul over the website." (Doc. 31-2 at 2.) Because this filing was not directed at U-Haul, instead only presented after the commencement of this lawsuit, it does not affect subject matter jurisdiction. *See Societe de Conditionnement en Aluminium*,

1    655 F.2d at 945 ("It is not relevant that [Defendant] attempted to withdraw its 'threat' after
2    the filing of this lawsuit.").

3           Public Storage's remaining evidence concerns the contents of the Orange Storage
4    Door Website and its knowledge of U-Haul's ownership. (*See* Doc. 21-2 at 4, 95-98.) As
5    previously discussed, Public Storage's knowledge is irrelevant to the standing analysis
6    because the focus is on the "position and perceptions of" U-Haul. *Chesebrough-Pond's,*
7    *Inc.*, 666 F.2d 396. The Winkelman declaration states the letters of protest attached to
8    the Amended Complaint were the ones submitted to the USPTO. (Doc. 24-3 ¶ 27.) At this
9    stage, those filings are enough to show U-Haul was not deliberately hiding its ownership
10   of the Orange Storage Door Website. *Leite*, 749 F.3d at 1121.

11          The Court finds that U-Haul has satisfied its burden of proving the Court has subject
12   matter jurisdiction. The evidence provided in response to Public Storage's facial challenge
13   indicates a justiciable controversy exists between the parties.

### 3.    Discretionary Jurisdiction

15          After determining whether standing exists, a district court "must decide whether to
16   exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Insurance*
17   *Co*, 316 U.S. 491 (1942), and its progeny." *Principal Life Ins. Co. v. Robinson*, 394 F.3d
18   665, 669 (9th Cir. 2005). *Brillhart* instructs a "district court should avoid needless
19   determination[s] of state law issues; [] should discourage litigants from filing declaratory
20   actions as a means of forum shopping; and [] should avoid duplicative litigation." *Gov't*
21   *Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). These factors are
22   non-exhaustive and intended to balance the "concerns of judicial administration, comity,
23   and fairness to the litigants."[5] *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir.
24   1994) (citation omitted).

---

[5] Some recognized factors include: "whether the declaratory action will settle all aspects
of the controversy; whether the declaratory action will serve a useful purpose in clarifying
the legal relations at issue; whether the declaratory action is being sought merely for the
purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use
of a declaratory action will result in entanglement between the federal and state court
systems. In addition, the district court might also consider the convenience of the parties,
and the availability and relative convenience of other remedies." *Kearns*, 15 F.3d at 145
(Garth, J., concurring).

1     This case does not implicate any of the enumerated *Brillhart* factors. Public Storage

2  argues the Court should decline jurisdiction based on bad faith. (Doc. 21 at 23-24.) But its

3  argument centers on U-Haul concealing its ownership of the Orange Storage Door Website,

4  which U-Haul's letters of protest with the USPTO disprove. Furthermore, Public Storage's

5  legal authority, *Green Planet Inc. v. International IP Holdings LLC*, is distinguishable

6  because it deals with forum shopping—something directly addressed in the *Brillhart*

7  factors and not argued here. No. CV 13-01565 BRO (DTBx), 2013 WL 12146119, at *4

8  (C.D. Cal. Nov. 25, 2013).

9     Finally, Public Storage argues the Court should decline to exercise jurisdiction

10  because U-Haul seeks "a declaration only that U-Haul's use of its *own* orange trade dress

11  does not infringe on [Public Storage's] rights," but the cease-and-desist letter never

12  "referred to *U-Haul's* trade dress and thus, individually or in combination" does not

13  support U-Haul's requested relief. (*See* Doc. 26 at 11.) Accepting this argument would cut

14  against the *Brillhart* factor a declaratory action should "settle all aspects of the

15  controversy" between the parties. *See Kearns*, 15 F.3d at 145 (Garth, J., concurring).

16     U-Haul has standing based on the first cease-and-desist letter. It cannot be faulted

17  for ensuring this litigation resolves the entire controversy between it and Public Storage.

18  Therefore, the Court will exercise its jurisdiction to consider the issues in this case.

19  **B.     Motion to Dismiss for Failure to State a Claim**

20     Public Storage argues that if jurisdiction exists, the Amended Complaint does not

21  state a valid claim for cancellation of a federal trademark in Counts VI-VIII. (Doc. 21 at

22  25.) These claims seek cancellation of Public Storage's ORANGE STORAGE, ORANGE

23  IS THE NEW SIZE, and ORANGE DOOR INSURANCE PROGRAM marks based on

24  fraud on the USPTO and abandonment. (Doc. 13 at 73-76.)

25  **1.     Fraud on the USPTO**

26     Counts VI and VII seek to cancel Public Storage's ORANGE STORAGE and

27  ORANGE IS THE NEW SIZE marks based on fraud on the USPTO. (*Id.* at 73-75.) The

28  basis of both counts is Public Storage making false representations on its Section 8

Declarations for both marks. (*See id.* ¶ 152, ¶ 160.)

A district court may order the cancellation of a trademark registration "[i]n any action involving a registered mark." 15 U.S.C. § 1119; 4 McCarthy, *supra*, § 30:109 ("[A] registration may be collaterally attacked [by a district court] in any civil action where validity of the mark is in issue."). Cancellation of a trademark based on fraud requires: "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013). "A false representation in the original trademark application or an affidavit accompanying a renewal application may be grounds for cancellation if all five requirements are met." *Id.*

Public Storage argues the Amended Complaint does not allege fraud "because a Section 8 Declaration attests only to how the mark is 'currently used,' not to any *past* or *future* use." (Doc. 21 at 26-27.) U-Haul argues, in response, the Amended Complaint alleges Public Storage "manufactured temporary specimens showing token use of the ORANGE STORAGE" and ORANGE IS THE NEW SIZE marks to maintain their registrations. (Doc. 24 at 22-23.) These arguments go to the first element—whether Public Storage made "a false representation regarding a material fact." *Hokto Kinoko Co.*, 738 F.3d at 1097.

"To keep a registration alive and valid, a registrant must file a Section 8 Declaration or affidavit of use between the fifth and sixth year of registration." 2 McCarthy, *supra*, § 19:135. The purpose of a Section 8 Declaration "is to automatically remove from the register those marks that are no longer in use in the marketplace." *Id.* Contained in the declaration is a statement "the mark is in use in commerce." 15 U.S.C. § 1058(b)(1)(A).

"The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." *Id.* § 1127. The term "bona fide" means a registrant must use their marks "for *genuine* commercial reasons."

*Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1255 (9th Cir. 2022) (quoting *Social Techs. LLC v. Apple Inc.*, 4 F.4th 811, 820-21 (9th Cir. 2022)) (emphasis added). Otherwise, genuine commercial use is still "bona fide even though *one* of the purposes of the use is to reserve a right in a mark." *Id.* (citation modified). If, however, a mark is predominately being used for registration preservation, and all other uses have "a purely ancillary commercial aspect" or fall outside the scope and character of the registrant's "ordinary course of trade," then the mark is not being "used in commerce." *See id.*

Here, the Amended Complaint alleges Public Storage did not use the ORANGE STORAGE and ORANGE IS THE NEW SIZE marks after acquiring them from a nonparty to this suit. (Doc. 13 ¶ 55, ¶ 70.) It continues that once Public Storage faced a deadline to file its Section 8 Declaration, it added the marks to pre-existing pages of its website to "create a specimen of use to submit to the USPTO with" the declaration. (*Id.*) Finally, the Amended Complaint alleges that Public Storage took the ORANGE STORAGE mark off its website shortly after filing the Section 8 Declaration and has not used the ORANGE IS THE NEW SIZE mark "in any way other than as a section header" in a single article on its website. (*See id.* ¶ 60, ¶ 74.)

These allegations sufficiently allege Public Storage made "a false representation regarding a material fact" on its Section 8 Declaration. By asserting Public Storage did not use the marks until shortly before its declaration was due, and asserting the use on the website was minimal at best, U-Haul has sufficiently alleged Public Storage merely used the marks to preserve its trademark rights. *See Lodestar Anstalt*, 31 F.4th at 1255. This is an appropriate basis for a claim of fraud on the USPTO.

Public Storage further argues, in its reply brief, that the Amended Complaint does not satisfy the other elements of fraud on the USPTO (Doc. 26 at 17-18.) The crux is the Amended Complaint does not sufficiently allege the intent behind Public Storage's actions and whether the USPTO relied on the misrepresentation. (*See id.* at 17.)

Cancellation claims based on fraud must satisfy Rule 8(a) and the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Cafasso v.*

*Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *BBK Tobacco & Foods LLP v. Skunk Inc.*, No CV-18-2332-PHX-JAT, 2019 WL 6050200, at *3 (D. Ariz. Nov. 15, 2019) (applying Rule 9(b) to a fraudulent procurement claim). Rule 9(b) requires a pleading "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Caffaso*, 637 F.3d at 1055 (citation modified).

The Amended Complaint sufficiently explains the "who, what, when, where and how" of the alleged fraud, as well as why it was allegedly false. *Id.* (citation modified). It explains Public Storage, through its Section 8 Declarations, stated the ORANGE STORAGE and ORANGE IS THE NEW SIZE marks were used in commerce when they had remained unused until shortly before the Section 8 filing and were immediately removed or only minimally used afterward. (*See* Doc. 13 ¶ 61, ¶ 75.) The Amended Complaint further alleges Public Storage made these filings knowing they were false and with an intent to deceive the USPTO. (*Id.* ¶ 62, ¶ 78.) Regarding reliance, it is reasonable to infer the USPTO relied on statements in Public Storage's filing when rendering its decision. *See* 2 McCarthy, *supra*, § 19:135 (explaining the purpose of a Section 8 Declaration "is to automatically remove from the register those marks that are no longer in use in the marketplace"); *see also Cousins*, 568 F.3d at 1067 (stating reasonable inferences are drawn in the non-movant's favor when considering a motion to dismiss).

Public Storage finally argues the Amended Complaint fails to allege fraud because "there can be no fraud based on a Section 8 Declaration where a trademark owner submits a specimen accurately reflecting the way in which it is using the mark." (Doc. 21 at 28.) This, however, would undermine the very purpose behind a claim of fraud on the USPTO—*i.e.,* the documents and statements the USPTO relied upon were intentionally incorrect. The case Public Storage depends on, *Zero Motorcycles, Inc. v. Pirelli Tyre S.P.A.*, 802 F. Supp. 2d 1078, 1088 (N.D. Cal. 2011), is distinguishable because the court delt with unlawful business practices under California's Unfair Competition Law, and the exemplar discussed was in relation to willful intent under California law. *See id.*

The Court therefore concludes Counts VI and VII adequately allege claims of fraud on the USPTO.

### 2. Abandonment

Counts VI, VII, and VIII seek to cancel Public Storage's ORANGE STORAGE, ORANGE IS THE NEW SIZE, and ORANGE DOOR STORAGE INSURANCE PROGRAM marks based on abandonment. (Doc. 13 at ¶ 155, ¶ 163, ¶ 167.) All three counts rely on Public Storage discontinuing its use of the marks with no intent to resume their use. (*See id.*)

Abandonment by nonuse requires "(1) discontinuance of trademark use *and* (2) intent not to resume such use." *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 935 (9th Cir. 2006). For the first element, "use of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127 (citation modified). The Ninth Circuit Court of Appeals understands this definition of "use" to be coextensive with the term "use in commerce" previously discussed in the fraud on the USPTO analysis. *Electro Source, LLC*, 458 F.3d at 936. Intent not to resume trademark use "may be inferred from circumstances." 15 U.S.C. § 1127. "Nonuse for three consecutive years [is] prima facie evidence of abandonment." *Id.*

The abandonment element "requires an intent not to resume trademark use, as opposed to prospective intent to abandon the mark in the future." *Electro Source, LLC*, 458 F.3d at 937. "[I]ntent not to resume use presupposes that the use has already ceased." *Id.* Thus, the elements are sequential; discontinuance is proven before a district court considers intent. *Id.* at 937-38.

The Amended Complaint alleges Public Storage acquired the ORANGE STORAGE and ORANGE IS THE NEW SIZE marks around November 19, 2018. (Doc. 13 ¶ 54, ¶ 69.) It continues Public Storage did not use the marks until around the time it needed to file its Section 8 Declarations—May 12, 2022, and May 2, 2023. (*Id.* ¶ 55, ¶ 58, ¶ 70.) The Amended Complaint asserts these were not bona fide uses and intended only to

preserve Public Storage's trademark rights. (*Id.* ¶ 61, ¶ 75.) The Amended Complaint also asserts the ORANGE STORAGE mark was removed from Public Storage's website shortly after filing the Section 8 Declaration, and the website only featured the ORANGE IS THE NEW SIZE mark "temporarily." (*Id.* ¶ 60, ¶ 75.)

These allegations sufficiently assert a prima facie case of abandonment for the ORANGE STORAGE and ORANGE IS THE NEW SIZE marks. Public Storage's last use of the marks, according to the Amended Complaint, was November 19, 2018. The Lanham Act states a prima facie showing of abandonment occurs anytime there is three years of nonuse. 15 U.S.C. § 1127. Here, three years would be November 19, 2021. Public Storage's use of the marks in 2022 and 2023 does not toll the abandonment deadline because the Amended Complaint plausibly alleges those instances were only to preserve trademark rights, which is not a bona fide use in commerce. *See Electro Source, LLC*, 458 F.3d at 936.

The Amended Complaint also alleges Public Storage ceased using its ORANGE DOOR STORAGE INSURANCE PROGRAM mark in 2023 and does not intend to resume the mark's use. (Doc. 13 at ¶ 88, ¶ 90.) To support these allegations, U-Haul attached a website printout of Public Storage announcing its change from the ORANGE DOOR STORAGE INSURANCE PROGRAM mark to a new one registered with the USPTO in 2024. (*See id.* ¶ 88, ¶ 86.) The Amended Complaint also includes a printout of a website homepage that only includes the new 2024 logo. (*Id.* ¶ 87; Doc. 13-2 at 61.)

On this point, Public Storage argues the exhibits attached to the Amended Complaint demonstrate it did not abandon its ORANGE DOOR STORAGE INSURANCE PROGRAM mark. (Doc. 21 at 29-30.) It explains the website printout announcing its change to a new mark is from November 12, 2024—the date U-Haul filed this lawsuit. (*Id.* at 29) This means the mark, according to Public Storage, is actively being used on its website and at most demonstrates a prospective intent to cease use, which is not enough for abandonment. (Doc. 26 at 20.)

Public Storage relies on *Wells Fargo & Co. v. ABD Insurance & Financial Services, Inc.*, 758 F.3d 1069 (9th Cir. 2014). There, a trademark registrant was rebranding to a new mark but continued using its old "mark in several ways, most notably in customer presentations and solicitations." *Id.* at 1072. The Ninth Circuit explained "even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." *Id.* (citation modified). The continued uses of the old mark by the registrant were enough to overcome a claim of abandonment, even with the registrant's prospective intent to abandon the old marks at some point. *See id.*

*Wells Fargo* is like this case because it involves rebranding. But it materially differs because the Amended Complaint alleges Public Storage has already rebranded away from the ORANGE DOOR STORAGE INSURANCE PROGRAM mark in favor of a new one. (Doc. 13 ¶ 87); *Cousins*, 568 F.3d at 1067 (factual allegations are construed in the light most favorable to the nonmovant). Further, *Wells Fargo* involved a motion for a preliminary injunction, which allows for fact-based determinations—something not permitted at the pleading stage. *See* 758 F.3d at 1071. Determining whether the display of the ORANGE STORAGE DOOR INSURANCE PROGRAM mark on Public Storage's website constitutes a single "use" sufficient to overcome U-Haul's claim of abandonment is a fact-intensive exercise requiring the Court to weigh multiple factors. *See Electro Source, LLC*, 458 F3d at 940. Such an inquiry is not appropriate.

The allegations in the Amended Complaint adequately assert a claim of abandonment. The alleged discontinuance of the mark occurred in 2023. (Doc. 13 ¶ 88.) And the intent not to resume use of the mark is alleged through the website homepage not containing any indication of the mark and Public Storage registering a new insurance-based mark with the USPTO. (*Id.* ¶ 86, ¶ 87.) This is enough at this stage of the litigation.

Therefore, the Court concludes Counts VI, VII, and VIII adequately allege claims of abandonment.

### C.    Motion to Strike Portions of the Amended Complaint

Public Storage moves the Court to "strike all references to unnamed third parties and to vague unspecified trade dress usage in Paragraphs A-C and E of U-Haul's Prayer for Relief." (Doc. 21 at 30.) Public Storage specifically takes issue with the following language in each paragraph:

> and U-Haul Businesses' services, including in connection with self-storage services, and including on signage, on buildings, on the website uhaul.com, on mobile application, and other marketing materials.

(*Id.*)

Rule 12(f) of the Federal Rules of Civil Procedure allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored and not frequently granted. *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1106 (D. Ariz. 2024). A matter is only immaterial when it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Ader v. SimonMed Imaging Inc.*, 324 F. Supp. 3d 1045, 1050 (D. Ariz. 2018) (quoting *Fantasy, Inc. v. Forgerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).

Public Storage argues the reference to "U-Haul Businesses" is immaterial because it "pertains to entities and issues not identified in the [Amended Complaint], and not part of any dealings between the parties that could give rise to a dispute." (Doc. 21 at 30; *see* Doc. 26 at 15.) U-Haul, however, persuasively responds it is only "seeking relief on its own behalf" and any mention of "U-Haul Businesses" is because its "sister companies, dealers, and licensees all use" the orange-based marks and trade dress challenged in Public Storage's cease-and-desist letter. (*See* Doc. 24 at 25 & n.1.) This means the language directly relates to U-Haul's requested declaratory relief and is not immaterial. *See Abboud*, 731 F. Supp. 3d at 1106 ("A statement is not immaterial if it relates directly to [a] plaintiff's underlying claim for relief.") (citation modified). The Court further finds the language is not redundant, impertinent, or scandalous. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 (9th Cir. 2010). With none of the Rule 12(f) categories satisfied, it would be

inappropriate to strike the reference to "U-Haul Businesses."

The Court will deny Public Storage's request to strike portions of the Amended Complaint.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** denying Defendant Public Storage Operating Company's Motion to Dismiss or, in the Alternative, to Strike Portions of the Complaint (Doc. 21).

**IT IS FURTHER ORDERED** vacating the oral argument scheduled for September 10, 2025, at 10:00 a.m. The Court finds that oral argument is not necessary to aid in the determination of the Motion. LRCiv. 7.2(f).

**IT IS FINALLY ORDERED** a Rule 16 Scheduling Conference will be set by separate order.

Dated this 2nd day of September, 2025.

Michael T. Liburdi
United States District Judge